JOHN MAGEE, Respondent, v. HARVEY P. BADGER and HIRAM
POTTER, Appellants.

One who purchases commercial paper for full value before maturity, without
notice of any equities between the original parties, or of any defect of title,
is to be deemed a *bona fide holder*.

He is not bound, at his peril, to be upon the alert for circumstances which might
possibly excite the suspicions of wary vigilance.

The rights of the holder are to be determined by the simple test of honesty and
good faith; and not by a speculative issue as to diligence or negligence.

An exception to a refusal to adopt in gross a series of propositions, in the form
of requests to charge, is unavailing if either of the propositions be erroneous.
The attention of the court should be drawn to each; and each should be the
subject of a specific ruling by the judge, and a specific exception by the party.

THE action was against the defendants as maker and
indorser of a promissory note for $350, with interest, payable
six months after date.

The defense was that the consideration was illegal, and
that the plaintiff was not a *bona fide* holder.

The cause was tried before Judge WELLES, at the Steuben
Circuit, and resulted in a verdict for the plaintiff. The
judgment was affirmed on appeal, the opinion of the court
being delivered by JOHNSON, J. (30 Barb., 246.)

The following facts appeared on the trial: The note in suit
was given to Frederic Davis, Jr., in settlement of a suit
brought by him on a previous note against Badger, which
was not indorsed by Potter; and the note thus given in set-
tlement was transferred by Davis to the plaintiff, for value,
before maturity.

The first note was given to the Buffalo, Corning and New
York Railroad Company. The defendant Badger was a
stockholder, and gave it for the purpose of preferring nine
shares of his stock under the provisions of chapter 146 of the
Laws of 1854. That note was for $300, payable in one year.
It was transferred to Davis (who was secretary of the com-
pany), in part payment of his salary, and was charged to him
on the company's books, and Davis brought a suit on that

note against Badger, which suit was settled by giving the note in question. Badger surrendered eighty-seven shares of old stock, and received from Davis, as secretary, under the arrangement, ninety shares of the preferred stock. At the time of issuing this new stock, the company was insolvent, and its effects had passed into the hands of a receiver.

The note in suit was purchased from Davis by the plaintiff about three months after it was given, and he indorsed the amount on a note of $400 which he held against Davis, and surrendered an accepted draft which he held as collateral security for the payment of the $400 note. The proof showed, and the jury found, that the plaintiff had no notice of the consideration of the note, and knew nothing of the issue of the preferred stock, or of the arrangement therefor between the maker and the payee.

The principal questions arose upon the requests to charge, and the instructions given by the judge to the jury.

*George B. Bradley*, for the appellants.

*David Rumsey*, for the respondent.

PORTER, J. At the close of the evidence, nine propositions were submitted to the judge, and an exception was taken to his refusal to adopt them in gross in his charge to the jury. The refusal was right, as several of them were plainly erroneous. The question whether the remaining propositions were correct, is one we are not at liberty to consider under a mere general exception, applicable in common to all. (*Hunt v. Maybee*, 3 Seld., 266, 273; 20 Barb., 343; *Haggart v. Morgan*, 1 Seld., 422, 427; *Magie v. Baker*, 14 N. Y., 437.)

There was no error prejudicial to the defendant in the instructions of the judge to the jury. He charged, at the request of the appellant, that the note in suit was invalid as between the original parties; and, on this assumption, the question whether the previous note was good or void was plainly immaterial. The fact that the plaintiff purchased the note in question for value before maturity, was proved

and undisputed. The instructions under which the judge submitted to the jury the issue as to the good faith of the plaintiff in making the purchase, were more liberal to the defendant than he was entitled to ask. He charged, in substance, that the plaintiff was not a *bona fide* holder, if he had notice, either of the facts which invalidated the note, or of circumstances of suspicion, which, upon due inquiry, might have led him to a knowledge of those facts. The instruction was not warranted by the evidence, and was based on a misconception of the existing rule of law. One who purchases commercial paper for full value before maturity, without notice of any equities between the original parties, or of any defect of title, is to be deemed a *bona fide* holder. He is not bound, at his peril, to be upon the alert for circumstances which might possibly excite the suspicions of wary vigilance. He does not owe to the party who puts negotiable paper afloat, the duty of active inquiry, to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The authority mainly relied on in support of the opposite theory is the case of *Gill* v. *Cubitt*, reported in 3 Barnwell & Cresswell, 466. The doctrine of that case has been repeatedly overruled, as well in the English as in the American courts; and it cannot be recognized as authority without an innovation in our system of commercial law, fraught with infinite mischief and uncertainty. (*Crook* v. *Jadis*, 5 Barn. & Adol., 909; *Backhouse* v. *Harrison*, id., 1098; *Goodman* v. *Harvey*, 4 Adol. & Ell., 870; *Raphael* v. *Bank of England*, 33 Eng. L. & Eq., 276; *Steinhart* v. *Boker*, 34 Barb., 436; *Goodman* v. *Simonds*, 20 How. U. S., 343; *Bank of Pittsburgh* v. *Neal*, 22 id., 96; *Murray* v. *Lardner*, 2 Wall. U. S., 110.) The error, however, was against the respondent, and neither party was prejudiced, as the jury, under instructions so favorable to the defendant, found that the plaintiff received the note in good faith.

The judgment should be affirmed.

CAMPBELL, J. The act of April 1, 1854, which was an act to increase the capital stock of the Buffalo, Corning and New York Railroad Company, by the issuing and sale of a certain number of shares of preferred stock, provided and declared that no such stock should be issued until the provisions of the act should be accepted by a vote representing at least two-thirds of the stock of the company, at a stockholders' meeting, or until the written assent of the holders of two-thirds of the stock should be obtained. By the terms of the act, the holders of the stock existing at the time of the passage were allowed to subscribe for one share of the new preferred stock for every three shares of the old stock held by them; and on paying the par value of such share of new stock, the other three shares of old stock might be converted also into new preferred stock. It is at once seen that if the act should be accepted by those owning two-thirds of the stock, and the directors of the company should cause the new preferred stock to be issued, it might be very desirable for the holders to convert their old stock, or a portion thereof, into such new stock. In that event they could make their subscriptions; and at the same time, by section 2 of the act, the directors could not demand immediate payment. The language of that part of section 2 is: "Provided that not more than one-half of the amount of such new stock so taken by each stockholder shall be required to be paid in by him within three months, and the remaining half may be required to be paid within six months after the acceptance of this act by the stockholders." This provision was for the benefit of the old stockholders; and it is difficult to see why, if the company should give further and additional time to any or all such stockholders, that thereby the subscription would be illegal and invalid. When Badger, who was a holder and owner of old stock, subscribed for three shares of the new stock, with a view of preferring nine shares of old stock, and gave, on making such subscription, his note payable in twelve months, and the company accepted it, payable at such time — thus, in his case, giving him a longer time for payment than the act required — he made, in my judgment, a perfectly valid and binding

contract. True, he never got his stock, because he never paid his note; but, on the contrary, refused to pay it when it became due. But the note was valid in the hands of the company, being given on his subscription. The payment for the new stock was to be made "in such manner as the board of directors of the said company shall direct at the time of subscribing." They had directed that Badger should pay for his stock at the end of twelve months, and should give his note therefor.

It seems to me very clear that this was a legal and valid note in the hands of the company, and was so in the hands of Davis, who owned it, and caused suit to be brought to enforce its collection. The note in controversy was given on the settlement of that suit, and, embracing interest, was simply and virtually a renewal of that first note. It might be added, in this connection, that the settlement of that suit formed a good consideration for the present note, even if there were doubts as to the validity of the first note. But, in my opinion, the first note was perfectly good, and, therefore, the second note was given for a full and perfect consideration, and good in the hands of Davis, to whom it was given. But it is said that the second note was rendered illegal, even if the first was good, because the secretary converted into preferred stock a much larger proportion of Badger's old stock than he was entitled to by his original subscription, and that this illegal act formed a part of the consideration of the new note. But this was not so. If the first note was a legal and valid note, then Badger was indebted on it dollar for dollar of the new note, and Davis got no more than he was legally entitled to receive, and which was justly his due. The suggestion as to the issue of the excess of preferred stock seems to have come from Bergen. The stock, at that time, it seems, was worthless. If Davis was inclined to issue this worthless stock in order to get his debt secured, while the act may not be commendable, it is difficult to see how it could destroy a good and valid claim then subsisting.

Upon the admitted and uncontradicted facts of this case, and without considering the exceptions, it seems to me very clear that this judgment must be affirmed.

Judgment affirmed.