## LORD vs. A. & J. F. WILKINSON.

The defendants, who were bankers, after having had notice that certain U. S. government notes had been stolen from the plaintiff, purchased the same, before they were due, in the ordinary course of business, paying full value therefor, without recognizing them as being the same notes which had been stolen, having forgotten the notice of the theft and the description of the notes which had been furnished them. *Held* that it was a question for the jury to decide, whether the defendants purchased the notes *bona fide*.

*Held, also*, that under these circumstances, the defendants were not entitled to have a verdict directed in their favor; but that the court, in charging the jury that "the defendants, once having had notice, were bound by it, although the notice might have been forgotten; and that they could not, under the circumstances of the case, be purchasers in good faith, although" &c., charged too broadly.

In such a case, it is necessary to prove more than negligence in taking the paper. Fraud—*mala fides*—must be shown. The circumstance of the purchaser forgetting, or omitting to look for, the notice of the theft, is no evidence of *mala fides*.

The case of *Gill* v. *Cubitt* (3 *B. & C.* 466) overruled.

MOTION for a new trial, upon exceptions ordered to be heard in the first instance at a general term, after a verdict for the plaintiff for the value of two stolen 7.30 U. S. notes of $100 each, purchased by the defendants, bankers in Syracuse. The notes were stolen at McGrawville, Cortland county, on the night of January 1, 1867. Handbills were immediately circulated, and advertisements published, describing these notes, among others lost at the same time, by the denomination, kind, date of issue and numbers. On the 9th of February, the plaintiff saw one of the defendants, told him of the robbery, and gave him a copy of the handbill. The evidence tends to show that the defendants examined the handbill carefully, and that after such examination, and on or about the 14th of February, they purchased one of these $100 notes. In March their attention was called to the fact that they had bought one of these notes, and afterwards and about August 14, 1867, they bought the other. Both notes were sold or converted by the defendants soon after they were bought. The evi-

dence of the defendants shows that they bought them before they were due, in the ordinary course of business, and paid full value for them; also that they had no intimation, knowledge or suspicion at the time of the purchases that these bonds were a portion of those stolen from Lord. The defendants requested the court to direct a verdict for the defendants, and excepted to the refusal so to do.

The court charged the jury that the defendants once having had notice, were bound by it, although forgotten, and that such notice destroyed the defendants' claim to be purchasers in good faith; to which the defendants excepted.

*Shankland & Shankland,* for the plaintiff.

*Sedgwick, Andrews & Kennedy,* for the defendants.

*By the Court,* BOARDMAN, J. The rule is conceded, that if a negotiable note, transferrable by delivery, be stolen and afterwards be negotiated to one having no knowledge of the fact, for value, in the usual course of business, and before the note is due, the purchaser acquires a valid title. (2 *Pars. on Notes,* 255, *and cases cited.*) The verdict of the jury has determined that the defendants had had notice that these notes were stolen, and that they bought them after receiving such notice. That the defendants paid the market value for the notes, and that they bought them in the usual course of business and before due, is not controverted. It is also proved, and not contradicted, that the defendants, *at the time when the purchase was made,* had no knowledge or suspicion that these bonds had been stolen, nor any intimation of any question about the seller's title. In other words, they had forgotten the notice the plaintiff had given them, and did not recognize these notes, although they had a perfect description of them.

Under these circumstances, the defendants asked that a verdict might be directed in their favor. Upon well

established principles of law that could not be done. It was a question for the jury to decide, whether the defendants had purchased these notes *bona fide.* The doctrine laid down in *Gill* v. *Cubitt* (3 *B. & C.* 466) was contrary to the law in England, as declared prior to that time. (*Peacock* v. *Rhodes, Douylass,* 633. *Miller* v. *Race,* 1 *Burr.* 452. *Lawson* v. *Weston,* 4 *Esp.* 56.) It has since been repeatedly overruled, both in England and America. (*Backhouse* v. *Harrison,* 5 *B. & Ad.* 1098. *Goodman* v. *Harvey,* 4 *Ad. & El.* 870. *Raphael* v. *Bank of England,* 17 *C. B.* 161. 84 *Eng. Com. Law,* 160. *Magee* v. *Badger,* 34 *N. Y. Rep.* 247. *Belmont Bank* v. *Hoge,* 35 *id.* 65.) It is now held that "the rights of the holder are to be determined by the simple test of honesty and good faith, and not by any speculative issue as to his diligence or negligence." (*Magee* v. *Badger, supra.*) He is not bound to be on the alert; he does not owe the duty of active inquiry to avert the imputation of bad faith. (*Id.*) In the case of *Raphael* v. *Bank of England,* (*supra,*) quite like the one under consideration, it was held that the circumstance of the banker forgetting or omitting to look for the notice was no evidence of *mala fides.* The judge submitted certain questions to the jury, which were answered, as follows : The bankers did give value for the note; they had notice of the robbery; they had no knowledge of the loss at the time they took the note, but they had the means of knowledge if they had properly taken care of it, and they took the note *bona fide.* Thereupon a verdict was ordered for the plaintiff, for the value of the note. A motion for a new trial was denied. The remarks of Jervis, Ch. J., and Crowder, J., (*pp.* 166, 167,) are very appropriate to this case. (2 *Pars. on Notes,* 272, 274, *and notes.*) It is necessary to prove more than negligence in taking the paper. Fraud—*mala fides*—must be shown. (1 *Pars. on Notes,* 258.) It was therefore a proper question to be answered by the jury, whether, upon the evidence, the defendants had acted *mala fides,* in the

purchase of these notes. Upon that subject there was evidence of the notice on the one hand, and the forgetfulness and ignorance of its contents, and of the facts, upon the day of sale, as sworn to by the defendants. Many other facts in proof were proper to be considered, as bearing upon this main point. But the defendants did not ask that this question should be submitted to the jury, and have therefore no exception in this respect which will avail them upon this motion.

The court, however, charged the jury that " the defendants once having had notice, are bound by it, although the notice may have been forgotten, and they cannot, under the circumstances of the case, be purchasers in good faith, although," &c.; and to this charge the defendants excepted. The receiving of the notice before the purchase of the bonds, being admitted by the defendants, this charge was in substance a direction to the jury to find a verdict for the plaintiff for the value of the notes and interest.

If the rule is well founded, that notice once given is good for ever—that knowledge acquired when notice is given, is conclusive evidence of knowledge possessed when the notes were bought—then this charge is correct. But if the *bona fides* of the defendants must be judged of from their acts, purposes and knowledge as they existed upon the day of the purchase, then the notice served is only *prima facie* or presumptive evidence of *mala fides*, and may be rebutted by proof that the notice was lost, or its existence and contents forgotten. The sufficiency and reasonableness of the explanation must then be submitted to the jury in connection with the other facts in the case, e. g. the length of time since the notice was given, and its particularity; the character of the stolen property; the rarity or frequency of the defendants' dealings in such property; the ease or difficulty of identifying it; the degree of watchfulness and amount of labor that would be required to discover it, &c. In the case of bank bills it is easy to see,

how descriptions of lost bills might become so numerous as to prohibit the receiving and paying out of money under such a rule, except at the peril of the bank. Indeed the government, in like cases, has refused to recognize notices of loss of U. S. bonds or notes, but pays to the holder without inquiry as to his title. It is essential that this be so, or such bonds and notes would soon cease to circulate freely.

The case of *Raphael* v. *Bank of England* (*supra*) is directly in point, and sustains fully the latter view. It holds that forgetting or omitting to look at the notice at the time of the purchase is not evidence of *mala fides*, but is evidence of negligence; that the question of good faith was for the jury; that the plaintiff having shown that he bought the note for value, in the ordinary course of business, and without present knowledge of the robbery, the burden of proof was thrown upon the other party to establish the *mala fides* of the purchaser; that knowledge of the robbery, at the date of the purchase, was essential to bad faith.

The only serious question in that case arose from the fact of a notice of the robbery having been given before the purchase. The courts decide that such notice is not conclusive. The courts of our State in deciding who are *bona fide* holders, and what is evidence of *bona fides*, cite as authority that case. (*Magee* v. *Badger,* and *Belmont Bank* v. *Hodge, supra*.) That would seem to be such a recognition of the principles therein enunciated as to establish their authority with us. If it be so, then I am reluctantly compelled, in opposition to my first impressions, to hold that the court erred in charging too broadly as to the effect and consequences of a notice once given, upon the subsequent conduct and position of the party notified.

For that reason the motion for a new trial should be granted, with costs to abide the event.

[BROOME GENERAL TERM, May 10, 1870. *Balcom, Murray, Parker* and *Boardman,* Justices.ʼ