------o------

N. B. HAMILTON, Appellant, *vs.* ABE. MARKS, *et al.*, Respondents.

1. *Practice, Supreme Court—Stare decisis—Rule as to may be departed from, when.*—Where a case is re-tried below, in conformity with a principle announced in the appellate court, cogent reasons must exist to induce a re-examination of the rulings. But where subsequent decisions of the upper court, although not professing to overrule or noticing the particular case, are inconsistent with it, and the question at stake is one of great importance to the community, the usual practice may be departed from.

2. *Bills and notes—Circumstances putting holder on inquiry not sufficient to defeat his title—Bona fides—Burden of proof as to.*—Suspicion, on the part of the taker of negotiable paper, of defective title in the prior holder, or knowledge on his part of circumstances which would excite suspicion thereof in the mind of a prudent man, or gross negligence on the part of such taker at the time of his transfer, will not defeat his title. That result can be produced only by bad faith on his part.

The rule that a purchaser is not an innocent holder if there are circumstances connected with the transfer sufficient to put an ordinarily prudent man on inquiry, is uncertain and devoid of uniformity, and no longer the prevailing law of the State. (Hamilton vs. Marks, 52 Mo. 78, overruled.) As to the burden of proof, the rule is, that where a note is shown to have been originally obtained or put in circulation by fraud or illegality, the *onus* is then on the holder, to show that he got it for value in good faith.

*Appeal from Linn Circuit Court.*

*George W. Easley*, for Appellant.

I. The holder of a negotiable note, who bought for value, before maturity, and without notice, can recover it, although he took the same under circumstances that would have excited the suspicion of a prudent man. Nothing short of *mala fides* in the

holder can defeat his recovery. (Goodman vs. Harvey, 4 Ad.& Ell. 470 ; Bank of Bengal vs. Fagan, 7 E. F. Moore, P. C. 61, 72 ; Raphael vs. Bank of Eng. 33 Eng. Law & Eq. R. 276 ; Stephens vs. Foster, 1 Cromp. Mees. & Rosc. 849 ; Arbouin vs. Anderson, 1 Ad. & Ell. 498 ; Bank of Bengal vs. Macleod, 7 E. F. Moore, P. C. 35 ; Crook vs. Jadis, 5 Barn. & Ad. 909 ; Backhouse vs. Harrison, 5 Barn. & Ad. 1098 ; Arthur vs. Rich, 10 Ad. & Ell. 784—all of which are later cases than Gill vs. Cubitt, and re-establish the old doctrine of Lawson vs. Weston, 4 Esp. 56—4 Camb. Lives of Com. Just. 315 ; Welsh vs. Sage, 47 N. Y. 143 ; Hall vs. Wilson, 16 Bush. 548 ; Magee vs. Badger, 34 N. Y. 247 ; Belmont Branch Bk. vs. Hodge, 35 N. Y. 65 ; Seybel vs. National Currency Bank, 54 N. Y. 288 ; S. C. 13 Am. R. 583 ; all of which overrule and expressly disaffirm Pringle vs.. Phillips, 5 Sand. p. 2157 ; Brush vs. Scribner, 11 Conn. 338, which overrules Hale vs. Hall, 8 Conn. 336 ; Worcester Bk. vs. Milton Bk., 10 Cush. 488, a later case than Cone vs. Baldwin, 12 Pick. 545, and approving Goodman vs. Harney ; Goodmman vs. Lineaus, 20 How. [U. S.] 343 ; Bank vs. Neal, 22 How. 108 ; Murray vs. Lander, 2 Wall. 110 ; Matthews vs. Poythress, 4 Ga. 287 ; Hamilton vs. Vought, 34 N. J. 18; Lake vs. Reed, 29 Ia. 258 ; S. C. 4 Am. R. 209 ; Gage vs. Sharpe, 24 Ia. 15 ; Phelan vs. Moss, 67 Pa. 59 ; Sto. Bills, §§ 194, 416 ; Edw. Bills, 506 ; 2 Pars. N. & B. 277, 278, 279 ; Sto. Prom. Notes, §§ 197, 382 ; Redf. Lead. Cas. N. & B. 257.)

II. The authorities above quoted fully sustain the position that even gross negligence will not defeat such holder's title.

III. The burden of proof was upon the defendant, to show both the fraud and that the plaintiff had notice of the same. (Uther vs. Rich, 10 H. & E. R. 784 ; 1 Smith Lead. Cas. s. p. 263a, s. p. 523 ; Swift vs. Tyson, 16 Pet. [U. S.] 1, 16 ; Corby vs. Butler, 55 Mo. 398 ; Greer vs. Yosti, 56 Mo. 307, 308.)

"The assignment of a note under due raises the presumption of the want of notice, and this presumption stands until it is overcome by sufficient proof." (Carpenter vs. Longan, 12 Wall. [U. S.] 271, 273.)

*S. P. Huston, with R. W. Mullins,* for Respondents.

I. If the maker prove that the note had been obtained from him by fraud, or was fraudulently put in circulation by the payee, then the burden of proof is upon the holder to show that he took it honestly, without knowledge of the fraud, and that he gave value for it. (Sto. Prom. Notes [5 ed.], § 196, and n. 3 ; Smith vs. Sac County, 11 Wall. [U. S.] 139 ; Bailey vs. Bidwell, 13 Mees. & W. 73 ; McKesson vs. Stanberry, 3 Ohio St. 156 ; Munroe vs. Cooper, 5 Pick. [Mass.] 412; Small vs. Smith, 1 Den. 583 ; Catlin vs. Hansen, 1 Duer. [N. Y.] 325, 326 ; 1 Smith Lead. Cas. part 2, p. 752.)

II. The general rule in regard to notice, is, that whatever is notice enough to excite attention, and put a party on his guard and call for inquiry, is notice of everything to which such inquiry might have led. And actual or express notice to the assignee of a negotiable note, transferred before maturity, of fraud on the part of the payee in procuring its execution, or want or failure of consideration, or other infirmity, is not indispensable ; but it is sufficient if the circumstances are such as ought to put an ordinarily prudent man on inquiry. Such was the opinion of this court when this case was here before. (Hamilton vs. Marks and Black 52 Mo. 78.) And this decision has been followed by this court in a number of subsequent cases. (Horton vs. Bayne, 52 Mo. 531 ; Greer vs. Yosti, 56 Mo. 307 ; Bennett vs. Torlina, 56 Mo. 309 ; Merrick vs. Phillips, 58 Mo. 436.) And the same rule of law in cases on commercial paper had, prior to the decision in this case, been recognized by this court. (Goodman vs. Simonds, 19 Mo. 106 ; Renshaw vs. Wills, 38 Mo. 201.) And generally, on the question of notice, see Hamilton vs. Marks (52 Mo. 78) and cases cited in appellant's brief, and in that opinion of the court.

This court, when this case was here before, having passed on the question as to what notice is sufficient to affect the plaintiff, as the assignee of the note from the payee, with the fraud of the payee in procuring the note, that question is not now open to dispute, but will be deemed *res adjudicata.* (Overall vs. Ellis,

38 Mo. 209.) What is notice? (Speck vs. Riggin, 40 Mo. 405.)

WAGNER, Judge, delivered the opinion of the court.

Plaintiff brought his action on a negotiable promissory note executed by the defendant to one T. H. Cooley, and by Cooley assigned to plaintiff before maturity. Black was a mere surety, and made a formal answer of denial. The separate answer of the defendant, Marks, set up a conditional sale of a farm to him by Cooley ; that the conveyance was made to him for the purpose of making the sale to one Walker, and that the note was executed to secure Cooley in the faithful discharge by Marks of the trust ; and that, in case no sale should be made to Walker before the note became due, the same was to be void.

Marks' answer also set up a fraudulent conspiracy between Walker and Cooley, to sell the farm to him, and charged the plaintiff with notice of the fraud. It was also averred that no value was given in consideration of the assignment, etc.

There was a replication filed by the plaintiff, denying all the material allegations in the answer, and upon the issues thus formed the trial was had. Both parties gave evidence tending to establish their respective sides of the case. There was a verdict for the defendants, upon which judgment was rendered, and the plaintiff appealed.

In order to understand and determine upon what theory the case was tried, it will be necessary briefly to recur to the material instructions given by the court. The nine propositions given on the request of the plaintiff, and the first two for the defendants cannot be subject to any contest, as they merely assert what has long been established as the law in reference to the rights and liabilities of parties to negotiable paper. But the remaining instructions given for the defendants constitute the principal matter of contention in the case, and are the ones to which plaintiff strenuously objects. By the third instruction the jury are told, that if they believe from the evidence that the note in suit was obtained by Cooley, the payee therein, by fraud practiced by him upon the defendant, Marks, or, if the circumstances appearing in proof

tend to show that the transfer of the note by Cooley to Hamilton was made by Cooley and accepted by Hamilton for the purpose of thereby gaining an advantage over defendants, then the burden of proof rests upon the plaintiff in the case, to show, before he can recover, that he purchased said note of Cooley in good faith, without notice or knowledge of such fraud, before the maturity of the note, and paid a valuable consideration therefor. The fourth instruction declares that if the jury believe from the evidence that the note sued on was obtained by Cooley from the defendant Marks by fraud, or fraudulent means used by Cooley, then in order to affect the plaintiff with notice of such fraud and render the note invalid in his hands, it is not necessary that he should have actual and positive knowledge of such fraud, before the assignment of said note to him, but that it is sufficient notice if it be such as ordinarily prudent men usually act upon in the common affairs of life. The fifth instruction says, that if from all the facts and circumstances given in evidence, the jury believe that the note in suit was procured from Marks by fraud, and they further believe that the plaintiff, Hamilton, before or at the time of the actual assignment, transfer and delivery of the note to him, and the actual payment of a valuable consideration therefor, knew of the existence of such fraud in the procurement of the note, or was then conscious of having the means of knowing, and failed to use them, or failed or declined to use that ordinary care and diligence which a prudent man usually acts upon in the ordinary affairs of life, then the plaintiff is not a purchaser of said note in good faith, without notice, and the jury should find for the defendants, although they may believe that plaintiff, Hamilton, paid Cooley a valuable consideration for the note. The sixth instruction asserts essentially the same proposition as embodied in the above, framed in different language.

The main questions for inquiry arising on the record, according to the foregoing instructions, are, first, whether circumstances of suspicion sufficient to put a prudent man on inquiry, constitute notice in regard to negotiable paper, and whether negligence or want of care in the investigation of such circumstances can be

imputed as notice; and further, upon whom is the burden of proof, when it is charged and proved that the note was founded in fraud so as to destroy its validity between the original parties, when it is in the hands of an assignee having been transferred before due.

This case was previously in this court, on appeal from the Linn county court of common pleas (52 Mo. 78), and the doctrine then announced was, that, in order to let in equitable defenses against a note assigned before maturity, express notice of the consideration before the assignment was made, was not indispensable; but that it would be sufficient if the circumstances were of such a character as necessarily to cast a shade upon the transaction, and to put the holder upon inquiry. The instructions upon this point followed the rule laid down above, and the plaintiff's counsel now zealously insists, that the principle declared is erroneous, and asks that it should be re-examined.

As a general proposition we should be unwilling to accede to the request. It is fit and proper that there should be an end to litigation, and when a rule has been adjudged upon mature deliberation, and after solemn argument, it ought to be considered as finally determined. When a case has once been in the appellate court and is sent back, if it is re-tried in conformity with the principles announced in the higher tribunal, and is again taken up, cogent and convincing reasons must exist to induce a re-examination of what ought to be considered as *res judicata*. But, in view of the fact that subsequent decisions of this court, though not noticing or professing to overrule the decisions in this case, are, in my opinion, inconsistent with it, and considering the great importance of having some settled and stable rule in reference to a question which so vitally concerns the business transactions of the whole community, it is deemed advisable to depart from the usual practice and consider the question again.

When the case was here before, the judge who wrote the opinion placed his chief reliance upon the authority of Pringle vs. Phillips(51 Sandf. 157), and the cases therein cited and reviewed by

Judge Duer, in his very elaborate and able opinion.    The case of Pringle vs. Phillips was decided in the superior court of New York City, and has been expressly disapproved and repudiated by the court of appeals in that State, as will be hereinafter shown.    Its doctrine has never attained a foundation in that great commercial State.    The case was an action of replevin in the *detinet*, for the recovery of merchandise which had come into the possession of the defendant from a fraudulent vendee of the plaintiff, as security for advances made, but, as alleged by plaintiff, with notice of the fraud, and the question now under consideration was not involved.

As England was the great commercial nation of the world, the leading principles of mercantile or commercial law have been derived from her courts.    The general rule of the common law was, that except by a sale in market overt, no one could give a better title to personal property than he himself had.    But it was established at an early period, that securities transferable by delivery were exempt from this principle.    In Lawson vs. Weston (4 Esp. 56), Lord Kenyon said : ''If there was any fraud in the transaction, or if a *bona fide* consideration had not been paid for the bill by the plaintiffs, to be sure they could recover ; but to adopt the principle of the defense to the full extent stated, would at once paralyze the circulation of all the paper in the country, and with it all its commerce.    The circumstances of the bill having been lost might have been material, if they could bring knowledge of that fact home to the plaintiffs.    The plaintiffs might, or might not, have seen the advertisement, and it would be going a great length to say that a banker was bound to make inquiry concerning every bill brought to him for discount.    It would apply as well to a bill for £10 as for £10,000.''    This doctrine of Lord Kenyon was not new.    The same principle has been previously announced by Lord Holt, in Anon (1 Salk. 126) ; by Lord Mansfield in Miller vs. Race (1 Burr, 452) ; in Grant vs. Vaughan (3 Id. 1,516) ; and in Peacock vs. Rhodes (2 Doug. 633) ; and was considered the well settled law.

But in the later case of Gill vs. Cubitt (3 Barn. & Cress. 466), decided in 1824, Abbott, Ch. J., upon the trial instructed the

jury: "that there were two questions for their consideration; first, whether the plaintiff had given value for the bill, of which there could be no doubt, and, secondly, whether he took under circumstances which ought to have excited the suspicion of a prudent and careful man. If they thought he had taken the bill under such circumstances, then, notwithstanding he had given full value for it, they ought to find a verdict for the defendant."

The jury found for the defendant, and after a full argument before the whole court, the charge was approved, and judgment was entered upon the verdict. The rule established in Gill vs. Cubitt created great dissatisfaction in mercantile and commercial circles, but it was adhered to for a period of twelve years, or as long as Chief Justice Abbott presided on the bench. He broke in upon the ancient rule and established the doctrine, but it died with his retirement.

In Crook vs. Jadis (6 Barn. & Ad. 909), the doctrine received a very material modification. The action was brought by the indorsee of the bill against the drawer. It was held that it was "no defense that the plaintiff took the bill under circumstances which ought to have excited the suspicions of a prudent man that it had not been fairly obtained. The defendant must show that the plaintiff was guilty of gross negligence."

This last case was affirmed in Backhouse vs. Harrison (5 Barn. & Ad. 1098), and one of the judges (Patterson) earnestly assailed the case of Gill vs. Cubitt. Finally a step further was taken in Goodman vs. Harvey (4 Ad. & El. 870), and the rule in Gill vs. Cubitt was utterly rejected and repudiated. Lord Denman, speaking for the whole court of King's Bench, used the following language: "I believe we are all of opinion that gross negligence only would not be a sufficient answer where the party has given a consideration for the bill. Gross negligence may be evidence of *mala fides*, but it is not the same thing. We have shaken off the last remnant of the contrary doctrine. Where the bill has passed to the plaintiff without any proof of bad faith in him, there is no objection to his title." This last case was decided in 1836. It was re-affirmed in Uther vs. Rich (10 Ad. &

El. 784), decided in 1839, and again in Arbouin vs. Anderson (1 Q. B. 498, 504), decided in 1841, and has ever since been the undisputed law of England.

The Supreme Court of the United States has adopted the rule announced in Goodman vs. Harvey, to its fullest extent. The question first came before that tribunal in Swift vs. Tyson (16 Pet. 1), and Goodman vs. Harvey, and the class to which it belongs, were followed. In the case of Goodman vs. Simonds (20 How. 343), Judge Clifford, writing the opinion of the whole court, gave the subject, both upon the authorities and upon principle, the most elaborate and exhaustive examination that is anywhere to be found in the books. From that case the following propositions are deducible: 1. The possession of negotiable paper carries the title with it to the holder. 2. The party who takes it before due, for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against all the world. 3. Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part. 4. The burden of proof lies on the person who assails the right claimed by the party in possession. This case was followed by the Bank of Pittsburg vs. Neal (22 How. 96), and again in Murray vs. Lardner (2 Wall. 110), the question was considered, and the cases reviewed, and Goodman vs. Simonds was affirmed by the whole court.

In New York the same principle is fully adopted. (Magee vs. Badger, 34 N. Y. 247.) In the case of the Belmont Branch Bank vs. Hoge (35 N. Y. 65), Mr. Justice Porter, in giving the opinion of the court, says: "Upon the facts proved, it is manifest that the jury were right in finding that the defendants were *bona fide* holders of the paper in question. The instructions of the learned judge on this branch of the case were more favorable to the plaintiffs than the law would strictly justify. He gave them the benefit of the assumption that, though the defendants

took the paper from the apparent owners, for value, before it became due, and without notice of any defect in their title, the plaintiffs could reclaim their bills if they proved the existence of circumstances which would have been likely to excite the suspicions of a cautious and vigilant purchaser. We cannot accept this as an accurate exposition of the rule applicable to the transfer of commercial paper, though it is in accordance with antecedent decisions in the superior court. (Keutgen vs. Parks, 2 Sandf. 60 ; Pringle vs. Phillips, 5 Sandf. 157 ; Danforth vs. Dart, 4 Duer, 101.)

"We had occasion to express our views on this question in the case of Magee vs. Badger (34 N. Y. 247). One who for full value obtains from the apparent owner a transfer of negotiable paper before it matures, and who has no notice of any equities between the original parties, or of any defect in the title of the presumptive owner, is to be deemed a *bona fide* holder. He does not owe to the party who puts such paper in circulation, the duty of active inquiry to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by the mere speculation as to his probable diligence or negligence. The authority mainly relied on in the exceptional cases which have favored an opposite theory, is the decision in Gill vs. Cubitt (3 B. & C. 466). The doctrine of that case has been repeatedly overruled, as well in the English as in the American courts ; and it cannot be recognized as authority without sanctioning an unwise innovation in our system of commercial law."

The question was again discussed in Seybel vs. Nat. Cur. Bk. (54 N. Y. 288), and the doctrine above announced was reiterated. The same principle is established in Pennsylvania. In Phelan vs. Moss (67 Penn. St. 59), after an elaborate discussion, it was held that a purchaser before due, and without notice, of a negotiable promissory note, fraudulent as between the original parties, obtained a title thereto, although he took it under circumstances which ought to have excited the suspicions of a prudent man. The case of Lake vs. Reed (29 Iowa, 258), is to the same effect.

(See also Raphael vs. Bank of England, 17 C. B. 161 ; Worcester County Bank vs. Dorchester Bank, 10 Cush. 488 ; Brush vs. Scribner, 11 Conn. 388 ; Woolfolk vs. Bank of America, 10 Bush. 504.)

In this State, in Horton vs. Bayne (52 Mo. 531), it was held that an indorsee of negotiable paper before maturity was presumed to be the owner in good faith and for value, unless there were circumstances antecedent to, or attendant on, the act of transfer, amounting to either actual notice to the holder, of fraud, illegality or failure of consideration, or such a combination of suspicious circumstances, as would, in legal contemplation, afford ground for the presumption that the purchaser of the paper was aware, at the time of its acquisition, of some equity between the original parties which should have prevented its purchase.    And in Merrick vs. Phillips (58 Mo. 436), it was decided that the consideration of a negotiable promissory note in the hands of an innocent holder for value, could not be inquired into, and before the consideration could be impeached it was necessary to show that the holder had notice of the lack of consideration.

It is conceded, that in the United States the decisions of the courts have varied.  Formerly a good many of the courts followed the principle established in Gill vs. Cubitt, and a few of them still adhere to the rule therein declared, but by far the greater number now concur in the doctrine which has been firmly settled in England and the Supreme Court of the United States, and in the courts of all the leading commercial States of the Union.    (Redf. & Big. Lead. Cas. 257 ; 1 Dan'l Nego. Instr. § 775.)

The rule that a purchaser is not an innocent holder if there are circumstances connected with the transfer sufficient to put an ordinarily prudent man on inquiry, is uncertain and void of uniformity.    Suspicions assert themselves in different ways in different minds.    In like manner, what is to be deemed prudence will be found to vary with different persons.    One innocent holder may be more or less suspicious, under similar circumstances, at one time than at another.    So, too, one prudent man may also suspect when another would not, and the standard of the jury may

be higher or lower than that of other men equally prudent in the
management of their affairs.

In any view, therefore, both upon principle and authority, and
from the experience of jurists and commercial men, and the in-
terests of the affairs of business life, it is safe to say that the lib-
eral doctrine which promotes the free circulation of negotiable
instruments, is the best, and that the good faith of the transaction
should be the decisive test of the holder's rights. It follows that
the court's instruction upon the question of notice was wrong.

The next question is as to the burden of proof, in case it was
found that the note had its inception in fraud. In the last edition
of Story on Promissory Notes, it is laid down that if the maker
prove that the note had been obtained from him by fraud or was
fraudulently put in circulation by the payee, the holder must
prove that he took it honestly, without knowledge of the fraud,
and it may then be incumbent on him to show that he has given
value for it. (Sto. Prom. Notes, 6 ed. § 196.) The rule is
stated very distinctly and clearly by Greenleaf (2 Greenl. Ev. §
172), where he says : "Even in an action by the indorsee against
an original party to a bill, if it be shown on the part of the de-
fendant that the bill was made under duress, or that he was de-
frauded of it, or if a strong suspicion of fraud be raised, the
plaintiff will then be required to show under what circumstances
and for what value he became the holder. It is, however, only
in such cases that this proof will be demanded of the holder ; it
will not be required where the defendant shows nothing more than
a mere want of consideration on his part."

For the propositions above stated, the learned authors cite
many cases. In Bailey vs. Bidwell (13 M. & W. 73), Baron
Parke says: "It certainly has been, since the later cases, the
universal understanding that, if the note were proved to have been
obtained by fraud or affected by illegality, that afforded a pre-
sumption that the person who had been guilty of the illegality
would dispose of it, and would place it in the hands of another
person to sue upon it ; and that such proof casts upon the plain-
tiff the burden of showing that he was a *bona fide* holder for

value." In Smith vs. Braim (3 E. L. & E. 379); the case of Bailey vs. Bidwell was commented on and approved, and Lord Campbell, C. J., said, that "since the new rules, judges have with entire approbation directed juries that when the bill was illegal in its inception, or when the immediate indorser to the plaintiff obtained possession of it by fraud, the want of consideration as between him and the plaintiff may be presumed, and in such case the onus is cast upon the plaintiff of proving that he gave value. In the subsequent case of Harvey vs. Towers, in the court of Exchequer (4 E. L. & E. 531), the same rule was enforced: Platt, Baron, observing that the cases of Bailey vs. Bidwell, and Smith vs. Braim, were the decisions of eight judges, and that the casting the burden of proving consideration on the holder of a bill shown to be effected by fraud, was an extremely just rule, as he must best know what consideration he gave for it. In Hall vs. Featherstone (3 H. & N. 284), Pollock, Ch. B., says: "If there are any circumstances in the nature of fraud or illegality which can be left to the jury, proof of these circumstances will cast on the plaintiff the *onus* of showing that he gave value for the bill." And Bramwell, Baron, said: "The cases have established that if there be fraud or illegality in the inception of a bill, or in the circumstances under which it was taken by the person who indorsed it to plaintiff, he must prove consideration. That is established beyond controversy.

The same doctrine has received the unqualified assent and approbation of the Supreme Court of the United States. In the case of Smith vs. Sac County (11 Wall. 139), it is expressly decided, that in a suit on a negotiable security, when the defendant has shown strong circumstances of fraud in the origin of the instrument, this casts upon the holder the necessity of showing that he gave value for it before maturity. In Ohio (McKesson vs. Stanberry, 3 Ohio St. 156), the rule is stated to be, that where it is shown that the transaction on the part of the original holder was a positive fraud, then it devolves on the party claiming under such transaction to show that he acted honestly, without a knowledge of the fraud. Savage, C. J., in Vallett vs.

Parker (6 Wend. 615), says: "The holder of a note or bill need not, in the first instance show a consideration—possession proves property ; but if there are any suspicious circumstances as to the *bona fides* of his possession, and the defendant has a good defense against the payee, then he must show that he paid value for it. For instance, if the note has been lost or stolen, or fraudulently put into circulation, etc., then the plaintiff must show that he came lawfully and fairly by it, and paid value for it." In Munroe vs. Cooper (5 Pick. 412), the Court declares : "We agree that a new trial in this case must be granted for the purpose of allowing the defendants to prove, if they can, that there was fraud practiced in the inception of the note, or that it was fraudulently put in circulation. This fact being established will throw upon the plaintiff the burden of proof, to show that he came by the possession of the note fairly, and without any knowledge of the fraud ;" and in Holme vs. Karsper (5 Bin. 469), the court said : "In the first instance it is presumed that every man acts fairly. It lies on the defendant, therefore, to show some probable ground of suspicion, before the plaintiff is expected to do anything more than produce the note on which he founds his action. But this being done, it is reasonable that the holder should be called upon to rebut the suspicion. All that is asked of him is to show that he has acted fairly and paid value."

The latest elementary writer on this subject thus sums up the rule as the settled law : "There may be, at this juncture, a shifting of the burden of proof from the defendant to the plaintiff, for the principle is well established, that if the maker or acceptor, who is primarily liable for payment of the instrument, or any party bound by the original consideration, proves that there was fraud or illegality in the inception of the instrument ; or, if the circumstances raise a strong presumption of fraud or illegality, the owner must then respond by showing that he acquired it *bona fide* for value, in the usual course of business while current, and under circumstances which create no suspicion that he knew the facts which impeach its validity. This principle is obviously salutary ; for the presumption is natural that an instrument so is-

sued would be quickly transferred to another, and unless he gave value, which could be easily proved if given, it would perpetrate great injustice and reward fraud, to permit him to recover." (1 Dan'l Nego. Instr. § 815.)

The reasoning by which the foregoing 'rule is supported is, I think, unanswerable, and commends itself for its manifest justice. Where an instrument is procured by fraud, or is affected with illegality, the payee would undoubtedly be eager to transfer it, so that suit would be brought in the name of another, in order to prevent any valid defense if possible.

In such a case, it is justice to the defendant, and it is no hardship to the plaintiff, to require him to show, that in acquiring the note he acted honestly and in good faith, and that he gave value for it. On this point, therefore, in giving the third instruction for the defendant, I think the court decided rightly. There are no other questions in the record requiring attention, or to which any objection is perceived.

For the giving of the fourth, fifth and sixth instructions, on behalf of the defendants, in regard to the question of diligence and notice by the plaintiff, I think the judgment should be reversed and the cause remanded. The other judges concur.