Foster, J.
On December 16, 1957 defendant executed a six-month promissory note to the order of John Wade, Jr. The instrument was payable at the Glen National Bank, Watkins Glen, N. Y., in the amount of $400, with interest. Apparently defendant was unable to read or write English. It was found below that the payee, Wade, prepared the note and induced defendant to sign it upon the misrepresentation that it was a statement of wages earned by Wade while working for defendant, and that it was necessary for income tax purposes. Defendant was not in debt to Wade, and there was no consideration given for the note. The note was signed at the home of defendant in Watkins Glen. At the time, his wife and daughter were present in the house, and his wife, who was able to read, was in an adjoining room. Defendant did not request his wife to read the instrument.
Subsequently defendant learned that the instrument he had signed might have been a note. He consulted his attorney who advised him to notify all of the banks in Schuyler County, and to advise them not to accept the note. In January of 1958, defendant orally informed the cashier of the plaintiff bank in Odessa that he “ had been tricked ” and that he did not intend to sign a note. He instructed the cashier not to ‘ ‘ cash a note ’ ’ for John Wade, and “ not to give him any money under my name ’ ’. The cashier told him ‘ ‘ not to worry ’ ’ and defendant departed. The cashier, Gilbert, recalled the incident, and testified that defendant told him not to give any money to anyone under FazzarVs name. Gilbert acknowledged that he probably *397 did toll defendant “ not to worry ”, but testified that at the time the note was presented to him for discount he had forgotten the incident.
We thus have an element presented in this case not present in any of the “ forgotten notice ” cases so far as we have been able to discover. Not only was notice given to the very cashier who subsequently discounted the note, but the defendant was assured that he had no cause to be concerned about the bank’s discounting the note. The phrase “not to worry” would present no other realistic meaning to the average person.
On April 10,1958 the note was presented to the First National Bank of Odessa by Wellington R. Doane, a customer of the bank and an indorsee of the payee, Wade. Doane indorsed the instrument in blank, and the plaintiff bank, by its cashier, Gilbert, accepted it for value, paying $400 by cashier’s check. It was found by the trial court that the cashier, at the time of the negotiation of the note to the bank, had forgotten defendant’s prior visit to the bank and the oral notice he had given.
After nonpayment and protest, the plaintiff bank brought this action against defendant. At the close of the evidence the trial court awarded judgment to the plaintiff, holding that the bank was a holder in due course under section 91 of the Negotiable Instruments Law, since its agent had forgotten the prior notice and had acted in good faith in accepting the note. The Appellate Division reversed, holding that the notice, once given, was binding on the bank (Negotiable Instruments Law, § 91, subd. 4); that the bank was not a holder in due course; and that the maker’s defense, therefore, was valid.
Thus the status of the bank is determinative here. The courts below found fraud in the factum; that is, defendant was induced to sign something entirely different than what he thought he was signing. In the absence of negligence on the part of the maker, such fraud constitutes a real defense and is sufficient against a holder in due course (Chapman v. Rose, 56 N. Y. 137; Page v. Krekey, 137 N. Y. 307, 313; Munnich v. Jaffe, 164 App. Div. 30, 32; Fenton v. Robinson, 4 Hun 252; National Exch. Bank v. Veneman, 43 Hun 241; see, also, Whipple v. Brown Bros. Co., 225 N. Y. 237, 241-246; Hulburt v. Walker, 258 N. Y. 8, 17). But the courts below have determined as a fact that defendant was negligent in not asking his wife to read over the *398 instrument prior to signing. We cannot say this finding was erroneous as a matter of law, particularly since defendant, an experienced business man, on prior occasions, asked that documents of obvious legal import be read to him before signing. Defendant also knew that he had paid Wade $500 in wages, and yet signed a purported statement of wages in the amount of $400.
The facts as determined by the trial court have been affirmed. The sole question presented is this: Did the bank, the purchaser of a negotiable promissory note, qualify as a holder in due course, and defeat the effect of a prior oral notice of infirmity in the note, by showing that it had forgotten the notice at the time of purchase?
Section 91 of the Negotiable Instruments Law provides:
“ A holder in due course is a holder who has taken the instrument under the following conditions:
“ 1. That it is complete and regular upon it face;
6 ‘ 2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;
“ 3. That he took it in good faith and for value;
“4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.”
Section 95 provides: “To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taldng the instrument amounted to bad faith ”.
The bank contends that the cashier did not have notice of the infirmity at the time of the negotiation, and thus the bank met each of the conditions of sections 91 and 95, and we are asked to apply the doctrine of forgotten notice. This doctrine was first enunciated in Raphael v. Bank of England (17 C. B. 161, 84 Eng. Com. Law 160) cited with approval by this court in Magee v. Badger (34 N. Y. 247, 249). In the Raphael case notice of a robbery of a certain note was given to a bank, but thereafter the bank accepted the note for value and contended that it had forgotten the notice. It was held that a jury ques *399 tion existed as to whether the bank had forgotten the notice or omitted inadvertently to look for the notice, and that such a lapse of memory and omission to look for the notice, if established, would constitute mere negligence, not mala fides. Mere negligence, it was held, would not destroy the bank’s status as a holder in due course. In Lord v. Wilkinson (56 Barb. 593 [Sup. Ct., Broome County, 1870]) the doctrine of forgotten notice was adopted by a court of this State, and Raphael v. Bank of England specifically was followed. In the Lord case the facts again were strikingly similar to those herein involved. In Graham v. White-Phillips Co. (296 U. S. 27) the United States Supreme Court, construing the Illinois Negotiable Instruments Law (containing the same provisions as the New York law), followed the Lord and Raphael cases, and referred specifically thereto. That case involved forgotten notice of stolen bonds, and it was held that the negligent omission to look for the notice, or to recall it, did not destroy the status of the defendant as a holder in due course.
The rule was followed in Merchants Nat. Bank v. Detroit Trust Co. (258 Mich. 526, cited with approval in Graham v. White-Phillips Co., supra) and in State Bank of Benkelman v. Iowa Des Moines Nat. Bank & Trust Co. (223 Iowa 596; see, also, Seybel v. National Currency Bank, 54 N. Y. 288, wherein this court virtually approved the doctrine; contra, Northwestern Nat. Bank v. Madison & Kedzie State Bank, 242 111. App. 22, holding notice, once given, is binding on the bank). The doctrine is not without its critics, who favor an objective test of notice. Thus, it is said, notice once given should bind the purchaser, for such a rule would impose upon the banks no more difficult administrative responsibility than they are under in many analogous situations (see, e.g., Britton, Bills and Notes [1943], p. 449; Merrill, The Wages of Indifference, 10 Temp. L. Q. 147; Unforgettable Knowledge, 34 Mich. L. Rev. 474; The Anatomy of Notice, 3 U. of Chi. L. Rev. 416; 10 Tul. L. Rev. 302; cf. 40 Harv. L. Rev. 315; 45 Yale L. J. 539).
Perhaps the doctrine is in accord with the general rule in New York, that “ The rights of the holder [of a negotiable instrument] are to be determined by the simple test of honesty and good faith, and not by speculations in regard to the purchaser’s diligence or negligence ” (Manufacturers & Traders *400 Trust Co. v. Sapowitch, 296 N. Y. 226, 230; Magee v. Badger, 34 N. Y. 247, 249). “ The requirement of the statute is good faith, and bad faith is not mere carelessness. It is nothing less than guilty knowledge or willful ignorance ” (Manufacturers & Traders Trust Co. v. Sapowitch, supra, p. 229; Kittredge v. Grannis, 244 N. Y. 168,178-179; Chapman v. Rose, 56 N. Y. 137, 140, supra). The doctrine, of course, is based on a policy of freedom of negotiability.
The Appellate Division was of the opinion that since the doctrine was adopted prior to the enactment of the Negotiable Instruments Law (Lord v. Wilkinson, supra) its rationale should be rejected. We are not prepared to reject the doctrine summarily and to hold that once notice is given it is fixed and immutable for all time as to negotiable instruments, particularly in the case where a blanket notice is broadcast with relation to stolen bonds and other securities (Kentucky Rock Asphalt Co. v. Mazza’s Adm’r, 264 Ky. 158, 165). But we also think that the doctrine should be applied with great caution in the case where a simple promissory note is involved. A lapse of memory is too easily pleaded and too difficult to contravert to permit the doctrine to be applied automatically irrespective of the circumstances surrounding each transaction and the relationship of the parties. Under the peculiar facts of this case a strict application of the doctrine would be unrealistic and not in the interests of substantial justice. As we have heretofore said, something more than the naked fact of notice is involved here. The defendant was practically assured that his notice would be honored and that the note would not be discounted by the plaintiff bank. Under such circumstances, the bank should be precluded from invoking the doctrine of “ forgotten notice.”
The judgment should be affirmed.
Chief Judge Desmond and Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Judgment affirmed.