Bank v. Pipkin.

CENTRAL NATIONAL BANK OF SPRINGFIELD, MISSOURI,
Appellant, v. MERRILL PIPKIN, Respondent.

St. Louis Court of Appeals, May 12, 1896.

1. **Promissory Notes**: NOTICE OF EQUITIES.  When the indorsee of
a negotiable promissory note has shown that he acquired it for value
and in good faith, actual notice of facts impeaching its validity must
be brought home to him to affect his rights.  Proof of gross negligence
on his part will not suffice; nor will a variance between the amount
of the note as written out in its body and that expressed on the mar-
gin by numerals of itself put him upon inquiry.

2. ———: ———: INSTRUCTIONS.  An instruction in an action on a
negotiable promissory note, which was brought by an indorsee against
the maker and involved such an issue, declared that the indorsee was
not entitled to recover, if the payee had not obtained the note in
good faith and the indorsee had acquired it from him with knowledge
of the circumstances as to the making of it.  *Held*, that the instruc-
tion was erroneous, in that it did not specify the facts to be found by
the jury as invalidating the note as to either the payee or the in-
dorsee.

3. ———: ———: NOTICE TO CORPORATE OFFICER.  *Held*, in the course
of discussion, that notice to the president of one corporation is not
notice to another corporation of which he happens also to be presi-
dent, where the dealing is between the two corporations each acting
in its own interest, and that in such a case the knowledge of the
common officer is not imputable to either corporation unless it was
acquired by him as an officer thereof.

*Appeal from the St. Francois Circuit Court.*—HON.
JAMES D. FOX, Judge.

REVERSED AND REMANDED.

*T. J. Murray* for appellant.

The marginal figures of the note in suit, referring
to the amount of the note, are merely in the nature of
a memorandum, and are immaterial when they con-

flict with the amount of the note as expressed in the body of it. Tiedeman on Commercial Paper, p. 64, paragraph 28; *Smith v. Smith*, 1 R. I. 398; *Payne v. Clark*, 19 Mo. 152. But if, for the purpose of argument, it be admitted that the figures in the upper left-hand corner were irregular in form and a contradiction of the written words in the body of the note, that of itself would not be sufficient to impart notice of any equity against the note. It is not enough for the defendant to prove gross negligence (which was not proven in this case), but he must prove actual notice on the part of the plaintiff, at the time or before the purchase of the note, of equities existing against the note and in favor of the defendant, as the plaintiff is presumed to be a purchaser of said note for value and before maturity. *Lincoln National Bank v. Schoen*, 56 Mo. App. 160, 167; *Jennings v. Todd*, 118 Mo. 296, 303, and 304; *First National Bank of Cameron v. Stanley*, 46 Mo. App. 440, 448; *Gage v. Averill*, 57 Mo. App. 111, 119, and 120.

*M. R. Smith* and *Burks & Burks* for respondent.

Under the testimony and all the circumstances of this case, it is apparent that the appellant bank failed to use that business prudence in purchasing the note of the loan association required of it by the law, and, so failing, it was not an innocent purchaser, and the maker of the note can urge all the defense against it that he had against the association. *Whaley v. Neill*, 44 Mo. App. 320; *Hamilton v. Marks*, 63 Mo. 173. The relations existing between the bank and the association were very intimate since they had the same chief officer, practically the same attorney, and a director common to both corporations. Besides, the association was a general customer and depositor of the appellant.

Very slight circumstances, because of these trust relations of the common officers, would raise strong suspicion of bad faith on the part of the bank, that would overthrow the presumption of its being an innocent purchaser. 1 Daniel on Negotiable Instruments, secs. 795a and 795b. The settlement between J. R. Haldeman, general agent of the National Loan and Investment Association, and respondent Pipkin, pursuant whereto Pipkin intended to give his note for $25 instead of $100 as he did, must be regarded as an act of the loan association, and all knowledge touching the same must be imputed to the association. Wade on Notice, secs. 672 and 673, and citations; 1 Waterman on Law of Corporations, sec. 135, p. 468; *Hayward v. National Insurance Co.*, 52 Mo. 190-192; *Mechanics' Bank v. Schaumburg*, 38 Mo. 243. The loan association having notice to the effect that the note sued on was, in fact, but a note for $25 instead of $100, and Geo. M. Jones being president of the association and also president of the appellant bank, the law presumes that when appellant purchased the note it had notice, through its president, of the nature of the consideration of the note, and just how much, in fact, the note represented, and of all defenses that the respondent would have against it as a note for $100. *Bank v. Phillips*, 22 Mo. 89; *National Bank v. Lovitt*, 114 Mo. 525; *Mechanics' Bank v. Schaumburg*, 38 Mo. 243-245; *Manhattan Brass Co. v. Webster, etc., Co.*, 37 Mo. App. 155; Wade on Notice, secs. 675, 683a, pp. 384, 389; *Smith v. Board of Water, etc.*, 38 Conn. 208; *Port Jervis v. First National Bank*, 96 N. Y. 550; 1 Waterman on Corporations, sec. 135, pp. 470, 471, and notes.

ROMBAUER, P. J.—This is a suit by the indorsee against the maker of a negotiable promissory note. The note is in words and figures as follows:

"$25.00. FARMINGTON, Mo., July 13, 1894.

"One year after date I promise to pay to the order of National Loan & Investment Association of Springfield, Mo., one hundred dollars, for value received, negotiable and payable without defalcation or discount, and with interest from date at the rate of eight per cent per annum, and, if interest be not paid annually, to become as principal and bear the same rate of interest. MERRILL PIPKIN."

The evidence upon the trial was uncontradicted that on the first day of July, 1895, R. P. Haldeman, the general manager of the payee, sold this note to the plaintiff bank for a consideration of $108, the party acting for the bank in the transaction being one McDaniels, its assistant cashier. The evidence is also uncontradicted that the entire note, including the words one hundred in its body, was written by the defendant himself. The weight of the evidence tended to show that the note was given to the payee in part settlement of a large claim, and was intended to represent an obligation of $25 only, and that the fact was well known to R. P. Haldeman, the general manager of the payee, and hence must be considered to have been well known to the payee himself. *Merchants National Bank v. Lovitt*, 114 Mo. 519. The evidence was also uncontradicted that the president of the plaintiff bank was at the same time president of the Loan and Investment Association, but there was no evidence that he knew of the mistake in the note, or that he was instrumental in having it discounted at the bank, or that he took any action on behalf of the bank in discounting it. In fact, the evidence is uncontradicted that he never learned that the note had been discounted by the bank until after this had been done, and there is no inferential evidence, as distinguished from a bare conjecture, tending to show the contrary.

The defendant made a tender of $27, which he claimed was all that was due on the note. This was, in substance, all the evidence. At its close the plaintiff asked a peremptory instruction to the jury to find for the plaintiff. This instruction the court refused, and the plaintiff excepted and still excepts.

Upon request of the defendant the court instructed the jury as follows:

"The court instructs the jury that, if you find from the evidence that the note sued on in this behalf was not received in good faith by the Loan and Investment Company, and that, at the time and purchase of it by plaintiff, that it, the plaintiff, had knowledge of such circumstances as to the making of said note, and its acceptance by the loan company, and yet, notwithstanding such knowledge, it willfully bought the note taking chances of its collection, then your verdict should be for plaintiff in the sum of $27, the amount tendered plaintiff by defendant."

The jury found a verdict for plaintiff for $27. The plaintiff appeals, and assigns for error that, under the uncontroverted facts, it was entitled to judgment for the full amount of the note with interest.

It goes without saying that the instruction given by the court for the defendant was erroneous in any view of the case, as it does not submit to the jury what facts and circumstances were to be found by them as invalidating the note for a greater amount than $27 in the hands of either the payee or the indorsee. We merely set it out as furnishing an explanation of the verdict, although our doing so is not essential to the disposition of the case.

We concede at the outset that there was ample evidence tending to show that the note was unsupported by a consideration in excess of $25 and interest, and that the defendant might have availed himself of that

defense in an action by the payee. The rule in some jurisdictions is that, when mere failure or want of consideration is set up against an indorsee before maturity, he is not even put to the onus of showing that he acquired the note for value and in good faith, and that such proof can be required only where the note had its inception in fraud or illegality. Conceding, however, that the holder may be put to such proof in both of the above cases, yet it is well settled in this state that, after he has shown that he acquired the note for value and in good faith, actual notice of the facts which impeach the validity of the note must be brought home to him, and that even proof of gross negligence on his part will not suffice to defeat his recovery. *Hamilton v. Marks*, 63 Mo. 167; *Johnson v. McMurry*, 72 Mo. 278; *Mayes v. Robinson*, 93 Mo. 114. But we fail to see even any gross negligence on part of the plaintiff in this case. Variations between amounts expressed in numerals and words in instruments of this character are not unfrequent, and it is well settled that in such cases the written words govern the amount. *Payne v. Clark*, 19 Mo. 152. We are aware of no case wherein such variation has been held in itself sufficient to give even rise to a suspicion, so as to put the indorsee upon the inquiry.

The defendant claims that the relations existing between the payee and the plaintiff were of a character to make the plaintiff chargeable with notice; that is to say, that notice to the payee was notice to the plaintiff. The only fact shown in this connection is that both institutions had the same president. It is not even shown that the payee's president had any notice of the existence of the defendant's supposed equity, or that he had any notice that the plaintiff was about to buy the paper. The proof on that subject is that the first information about plaintiff's purchase of the paper was

received by him after it was an accomplished fact, and that the first information he received that defendant claimed some equities in connection with the note was after it became due. But, even if the facts were otherwise, they would be unavailable to the defendant as a defense, since notice to the president of one corporation can not be notice to another corporation of which he happens to be president where the dealing is had between the two corporations, each acting in its own interest. In such cases the knowledge of the common officer is not imputable to either corporation, unless acquired by him as officer of such corporation. *Merchants National Bank v. Lovitt,* 114 Mo. 519; *Benton v. German American National Bank,* 122 Mo. 332.

We must conclude that the court erred in not instructing the jury to find for the plaintiff for the full amount of the note with interest. The judgment is reversed and the cause remanded, to be proceeded with in conformity with this opinion. All the judges concur.