VETTE, Appellant, v. SACHER et al., Respondents.

**St. Louis Court of Appeals, October 17, 1905.**

1. **NEGOTIABLE PAPER: Innocent Purchaser: Notice.** Under the rule that an indorsee of a negotiable note for value before maturity can not be affected by equities existing between the parties to the instrument, unless he had notice of the same, a mere suspicion on the part of the purchaser that the instrument is tainted with fraud will not prevent him from being a holder in good faith.

2. ———: ———: ———. But where an indorsee of a promissory note was notified by the indorser not to buy it, because there was something wrong with it, and agreed with the indorser that he would not buy it, when he purchased afterwards without notice from the indorser to the contrary, he was not an innocent purchaser.

3. **PRACTICE: Witnesses: Harmless Error.** Where the wife of a party, though an incompetent witness, was permitted to testify, but testified to nothing of importance which was not testified to by her husband, it is not a reversible error.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

AFFIRMED.

*Jamison & Thomas* for appellant.

(1) The court should have given the peremptory instruction for plaintiff. There was no evidence to support the defense in the case. Muth v. St. Louis Trust Co., 77 Mo. App. 493; Breckenridge v. White, 93 Mo. App. 681; Dunbar v. Fifield, 85 Mo. App. 484; Shoot v. Dorian, 36 Mo. App. 177; Woodson v. Richie, 36 Mo. App. 506. (2) The court erred in giving instruction based upon the theory that Sacher represented to Hauck that said stock was worth its par value, when it was in fact worthless; because there is absolutely no evidence in the case that either of said conditions existed. Marr

v. Bunker, 92 Mo. App. 651; Day v. Citizens Ry. Co., 81 Mo. App. 471; McAtee v. Valandingham, 75 Mo. App. 45; Paddock v. Somes, 102 Mo. 226; Sparks v. Brown, 46 Mo. App. 529; McKeon v. Railroad, 42 Mo. 79; Mateer v. Railroad, 105 Mo. 320; Graton Mfg. Co. v. Troll, 69 Mo. App. 475. (3) To defeat recovery by a transfer of a negotiable note it is not sufficient that he had merely suspicion at the time he acquired it that same was without consideration, or was obtained by fraud; it is necessary that he have actual notice of facts which will impeach its validity. Leavitt v. Taylor, 163 Mo. 158; Borgess Inv. Co. v. Vette, 142 Mo. 560; Mayes v. Robinson, 93 Mo. 114; Hamilton v. Marks, 63 Mo. 167; Wilson v. Ridler, 92 Mo. App. 335; Bank v. Pipkin Del's, 66 Mo. App. 592; Bank v. Stanley, 46 Mo. App. 440; Bank v. St. Louis S. Co., 4 Mo. App. 276. (4) Dissatisfaction on the part of the maker of a note with that for which the note is given does not affect the validity of the note. 6 Am. and Eng. Ency. of Law (2 Ed.), 734; Wyatt v. Jackson, 55 Minn. 87; Baker v. Roberts, 14 Ind. 552; Williamson v. Hitner, 79 Ind. 233. (5) In the case of a note requiring consideration, defendant must show a total failure of consideration in order to defeat the obligation of the note. 6 Am. and Eng. Ency. of Law (2 Ed.), 694; 4 Ibid 200, 308, 188-9, 199; Hahn v. Bradley, 92 Mo. App. 399; Stephenson v. Lanier, 20 La. Ann. 347; Ilslay v. Smedeis, 7 N. Y. Supp. 671; Affirmed in 15 Daly (N. Y.) 488; Rublee v. Davis, 33 Neb. 779 (29 Am. St. Rep. 509); Lawrence v. McCalmont, 2 How. (U. S.) 426; Worth v. Case, 42 N. Y. 362; Johnston v. Smith, 86 N. C. 498.

*Kurt von Reppert* for respondent.

The court properly submitted the case to the jury on the evidence. There was no evidence that Vette was a bona fide purchaser, for value, without notice, before maturity, but, on the contrary, there was abundant evi-

dence that he bought the note in bad faith and with notice. Whalley v. Neil, 44 Mo. App. 319; Denton v. McInnis, 85 Mo. App. 542; Studebaker Mfg. Co. v. Dixon, 70 Mo. 272, citing Cass County v. Green, 66 Mo. 498; Henry v. Sneed, 99 Mo. 407; I. Daniels Neg. Inst. (3 Ed.), secs. 799, 815, 819; Brown v. Hoffelmeier, 74 Mo. App. 390, 91, 92; Sammons v. O'Neil, 60 Mo. App. 530; Dry Goods Co. v. Schooly, 66 Mo. App. 406; 7 American Digest (Cent. Ed.), No. 817, pp. 1090-91 et seq.; Skilding v. Haight, 15 Johns 570; Gafford v. Hall, 39 Kan. 166; Crampton v. Perkins, 62 Md. 22; 7 American Digest (Cent. Ed.), No. 829; Bank v. Johnson, 31 Tenn. (1 Swan) 217; Kineland v. Miles (civ. app.), 24 S. W. 1113; 7 American Digest (Cent. Ed.), No. 805, 1374, 1374½, and cases cited; Hamlin v. Kingsly, 12 Ill. 342.

## STATEMENT.

The court refused a peremptory instruction requested by the plaintiff, and one other not necessary to be noticed, but gave, at the plaintiff's request, the following:

"The court instructs the jury that if you believe from the evidence in this case that the plaintiff, John H. Vette, purchased the note and paid value therefor before the maturity of said note without notice of any equities existing between the maker of said note and the defendant Hauck, then the jury will find in favor of the plaintiff for the amount of the principal of the note sued on, together with interest from August 3, 1903, to February 15, 1905, at the rate of six per cent per annum.

"The court instructs the jury that the note introduced in evidence is sufficient evidence of itself to entitle the plaintiff to recover the full amount thereof, principal and interest, according to the terms of the note, unless you find for the defendant under the other instructions; and the court further instructs the jury that the burden is upon the defendant Hauck to show

by a preponderance of evidence that the plaintiff took the note offered in evidence with notice of the defense interposed by defendant Hauck, if you believe that said defendant had a defense sufficient under the other instructions given you in this case, and unless you find from the evidence that the said defendant has shown such facts, your verdict must be in favor of the plaintiff.

"The court instructs the jury as a matter of law, that the consideration of a negotiable note cannot be impeached in the hands of an innocent purchaser for value, who has received it in good faith before it became due without any notice of such defense, provided you find from the evidence that defendant had any such defense. And if the jury believe from the evidence in this case that the defendant Hauck indorsed his name on the back of the note offered in evidence, and that said note was duly protested and said defendant Hauck received notice of said protest and non-payment, then under the issues in this case, the defendant Hauck assumes the burden of proving by a preponderance of the evidence not only that the consideration for the indorsement of the note has wholly failed, but also that the plaintiff had notice of the alleged failure of consideration for the indorsement at the time he purchased the note.

"The court instructs the jury that unless you find and believe from the evidence adduced in this case that the shares of stock in the Hampton Lead Mining Company, received by the defendant Hauck to secure him on the indorsement of the note sued on, were absolutely without value, you must find in favor of the plaintiff and against the defendant, Hauck, and if you believe from the evidence that said stock was of any value at all at the time it was transferred to defendant, Hauck, then the court instructs you that the defendant had no right to withdraw his indorsement from said note, and your verdict must be in favor of the plaintiff."

At the request of the defendant the court gave these instructions:

"The court instructs the jury that if you believe from the evidence in this case that on or about the 3d day of August, 1903, the defendant, August Sacher, requested the defendant, Valentine Hauck, to indorse the note sued on in this case, and promised and agreed and did give to said Hauck the two certificates of stock of the Hampton Lead Mining Company, referred to in the testimony herein, as a consideration, and as the only consideration for said Hauck indorsing said note, and if you further believe from the evidence that said Sacher at said time represented to said Hauck that said stock was worth the par value thereof; and if you further believe that at the time said stock was worthless; and if you further believe from the evidence that prior to the time plaintiff John H. Vette paid or bought said note and paid the money thereon, he knew or was informed that said Hauck had not received anything of value for said indorsement, and that he, said Hauck, would not pay or be bound by said note or indorsement, and that without receiving any further information from said Hauck, said Vette bought said note, then your verdict must be in favor of the defendant Hauck.

"In weighing the evidence and determining the credibility of the witnesses, and each of them, the jury shall look to the manner and demeanor of each witness in testifying, to the interest or want of interest, if any, upon one side or the other; to whether the witnesses or either of them, have any bias or feeling, or not; to the witness's means of knowledge of, and opportunity for knowing the facts he testifies to and professes to know; and to the reasonableness or unreasonableness and to the probability or improbability of the circumstances related by the witnesses when considered in connection with all the facts and circumstances before you; and you are not compelled to take any statement made by any witness as absolutely true, unless you find and believe

from the circumstances shown in the evidence that such statements are true."

The jury returned a verdict in defendant's favor and plaintiff appealed.

GOODE, J. (after stating the facts).—The plaintiff bought a promissory note for $250, dated August 3, 1903, due two months after date, drawing six per cent interest and payable to the order of the maker, August Sacher. Sacher induced the defendant Valentine Hauck to become an accommodation indorser on the note and sold it before maturity to Vette. Hauck's indorsement was procured by Sacher depositing with him as security to indemnify him against loss, $1,000 of the Hampton Lead Mining Company's stock of the par value of one dollar a share. Sacher and a man named Wernse were interested in mining enterprises and acted together in raising money on the note. When it was first offered for sale to Vette, he refused to buy it until he asked Hauck if the note was all right. On calling at the latter's residence to make the inquiry he found Hauck absent, but told Hauck's wife the purpose of his visit and she asked him not to buy the note, saying her husband had already lost enough by Sacher and Wernse. When Hauck came home in the evening his wife told him about Vette's visit, and the next morning he went to Vette's office and notified the latter, or a girl in his employ, that there was something wrong with the note and not to buy it. Thereupon Vette told Wernse that as Hauck objected to the note he (Vette) would not purchase it. Vette swore that two days afterwards Wernse told him Hauck was satisfied to have his indorsement stand. Vette said he did not accept Wernse's statement, but sent his clerk to inquire of Hauck if this was true and Hauck said it was. The clerk testified in corroboration of this statement, but Hauck denied ever telling Vette, or his agent, that his indorsement was all right and the note might be safely purchased, or any-

thing of the like import. He swore that after he noti-
fied Vette not to buy he heard nothing more of the mat-
ter until Vette demanded payment. It appears that
after Hauck had notified Vette, Sacher put $500 more
mining stock in Hauck's hands, making a total of $1,500
worth of stock which he held as security; but Hauck
swore he was still dissatisfied with the security and un-
willing to take the risk of indorsing the note. There
was evidence pro and con as to the value of the mining
stock. That for the plaintiff went to show it had a mar-
ket value of one dollar a share and an intrinsic value
of less; whereas the testimony for the defendant tended
to show it was worthless. The mining company had
acquired forty acres of wild land in Jefferson county for
$2,500, put some mining machinery on it which cost
$1,500 to $2,000, had four or five hundred dollars in the
bank and owed, as we understand, $1,500, besides a
claim by Sacher for $1,700. The par value of the stock
issued was $50,000, but about $8,000 of this was in the
treasury.

The main point urged for reversal is that the evi-
dence conclusively showed the mining stock pledged to
Hauck to induce him to indorse the note had an intrin-
sic, if not a market, value; and that as he received sub-
stantial value for the indorsement, he remained bound,
notwithstanding his attempt to terminate his liability.
The court left it to the jury to find whether or not the
stock was worthless and made Hauck's right to a ver-
dict depend on a finding that it was. Plaintiff's counsel
say the court erred in submitting the issue to the jury,
as all the evidence tended to show the stock had a value.
Our opinion of the evidence is otherwise. The com-
pany was in debt to some extent and its assets were
meager and speculative. It was capitalized for $50,000,
which, on the most liberal estimate of the value of the
property, was five or six times what it was worth. A
shaft had been sunk on the forty acres of land, but no

114 app—24

mineral struck. There was positive testimony for the plaintiff that the stock was without value. Moreover, we are not prepared to say the inference is unwarranted that stock in a concern whose affairs are in the condition the Hampton Lead Mining Company's were, had no real value, either intrinsic or market. If mining operations had been continued, ore in paying quantities might have been found, or the company might have used up its assests and run in debt fruitlessly. On the other hand, the mere fact that, had business been discontinued and all the assets converted into cash, a small dividend might have been paid on the stock, would hardly give the stock a genuine present value; for there was no intention to do this; quite the contrary. We think it was a fair conclusion from the evidence that the stock pledged to Hauck as security was wholly worthless. Hauck could neither sell the stock in the market, nor realize anything by winding up the company, or otherwise.

It is further urged that Vette had no notice or knowledge of the failure of the consideration for Hauck's indorsement; that is, of the worthlessness of the stock—but was only told by Hauck there was something wrong with the note and not to buy it. The argument in this connection is that an indorsee of a negotiable note for value before maturity, cannot be affected by equities existing between the parties to the instrument, unless he has knowledge of the specific facts out of which the equities spring. Suffice to say as to this proposition that when Hauck notified Vette not to purchase the note, and that there was something wrong about it Vette accepted the warning as sufficient and declared to Hauck that he would not purchase unless everybody was satisfied. There is no positive testimony that Hauck, or any one else, told Vette the stock pledged to the former was of no value, but there are circumstances tending to show Vette understood why Hauck repudiated his indorsement. At first Vette refused to

buy without Hauck's approval of the note. Afterwards, on being told by Wernse that Hauck's objection to his buying was withdrawn, he sent word to Hauck to be at his (Vette's) place of business by noon if he wished to object to the purchase of the note on the faith of his indorsement. Hauck was on hand between twelve and one o'clock and was informed he was too late as Vette had already bought the obligation. The latter paid about $200, he said. These facts go to prove Vette acted in bad faith. He failed to keep his promise not to buy until Hauck was willing he should, unless Hauck gave consent, after his first refusal; and as to the latter issue the testimony conflicted. It is undoubtedly true that mere suspicion on the part of a purchaser of a negotiable instrument before maturity that the instrument is tainted with fraud, will not prevent the purchaser from being a holder in good faith. [Hamilton v. Marks, 63 Mo. 167.] And, decisions are to be found which say a purchaser must have notice or knowledge of the specific facts impeaching the validity of the instrument. [Bank v. Pipkin, 66 Mo. App. 592; Leavitt v. Tailor, 163 Mo. 158, 63 S. W. 385.] But the decisive fact in this case is that Vette admitted accepting Hauck's notice regarding the infirmity of the note as sufficient warning not to buy and that he agreed with Hauck he would not buy. Therefore, unless he afterwards, and before buying, received some notice from Hauck to the contrary, or it appears that Hauck afterwards concluded to stand by his indorsement, Vette cannot claim to be an innocent purchaser, if the indorsement was procured by fraud.

Defendant's wife was permitted to testify on the ground that she was his agent. He swore she was his agent in taking orders and paying bills in connection with his business, which was that of an express man. We think there was no evidence to prove she was his agent in this particular connection. She was an incompetent witness. But she swore to nothing of importance

which was not testified to by Vette himself, and there is no reason to reverse the judgment because her testimony was received.

We think the case was quite carefully tried and that no reversible error was committed. The judgment is, therefore, affirmed. All concur.