LaFayette W. Argetsinger, Jr., J.
This is an action tried before me without a jury by the plaintiff bank against Mike Fazzari, drawer of a promissory note for $400, dated December 16, 1957, reading: “ Six months after date for value received I promise to pay to the order of John Wade, Jr. Four hundred and no/100 Dollars at the Glen National Bank, Watkins Glen, New York, with interest.” • This note was signed “ Mike Fazzari ’ ’.
The evidence indicates that the defendant, Mike Fazzari, signed this note believing it to be a statement with respect to wages paid by him to John Wade. Jr., for the latter’s use in connection with making his income tax return, such being the representation made to him by John Wade, Jr. This transaction occurred at the home of the defendant who testified that he is unable to read or write English and he did not ask his wife, who was in the next room, to read it over before signing, although she reads, writes, understands and speaks English. Shortly thereafter and before the first of the year (1958), he discovered that the paper he signed was a note for $400 which he says he did not owe John Wade, Jr. He then consulted his attorney, Henry Valent, who advised him to contact all the *352 banks in Schuyler County, including the First National Bank of Odessa, plaintiff herein, and advise them not to accept this note. He called on the plaintiff bank and the other banks in Montour Falls and Watkins Glen. At the Odessa bank he told the cashier, Kenneth Gilbert, “ Don’t give any money to anyone under my name ’ ’, according to the testimony of Kenneth Gilbert; and the testimony of Mike Fazzari was substantially the same. On direct examination, Mike Fazzari stated, ‘11 told him that if John Wade went to the bank to try to cash a note not to give him any money under my name, that I had been tricked and it wasn’t the paper I thought I signed, he said not to worry and I said, ‘ thanks ’ and walked out.” There was no written notice served upon the Odessa bank either by Mike Fazzari or his attorney, Henry Valent.
The conversation which Mike Fazzari had with Kenneth Gilbert at the Odessa bank occurred early in January, 1958. On April 10, 1958 this note was presented to the First National Bank of Odessa by Wellington R. Doane, indorsed on the back, “ endorsed by John L. Wade, Wellington R. Doane ” and the bank accepted the note, paying $400 by cashier’s check for same and on June 10, 1958 forwarded said note to the Glen National Bank at Watkins Glen, New York, upon which it was drawn for collection. The Glen National Bank protested this note on its due date, June 16, 1958, and forwarded same to the plaintiff bank.
At the termination of the trial, decision was reserved and the minutes were ordered transcribed and subsequent thereto, the court requested that counsel file briefs.
Attorney Oseo Peterson of Odessa, New York, appears for the plaintiff and Attorney Henry Valent of Watkins Glen, New York, appears for the defendant.
Section 91 of the Negotiable Instruments Law provides:
“A holder in due course is a holder who has taken the instrument under the following conditions:
“ 1. That it is complete and regular upon its face;
“ 2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;
“ 3. That he took it in good faith and for value;
1 ‘ 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.”
Under subdivision 1, the court holds that the note in question is complete and regular upon its face.
*353 Under subdivision 2, the court finds that the plaintiff bank accepted this note for value before the due date and that said note had not previously been dishonored.
The defendant argues that, since the fraud alleged in this case was fraud in esse contractu or fraud in the factum whereby defendant was induced to sign something that was entirely different than what he thought he was signing, this fact renders the document void and is a real defense against a holder in due course.
It is true that the courts in this State have held consistently that such fraud would constitute an absolute defense if the maker is not guilty of “ negligence ” or as held by some cases, “ any negligence ”. In Chapman v. Rose (56 N. Y. 137 [1874]), the court so held ‘ ‘ if free from any negligence and not guilty of misplaced confidence in the person dealt with ’ ’; the following cases so held if free from “ any negligence ” or “ negligence ” (Whitney v. Snyder, 2 Lans. 477 [1870]; Fenton v. Robinson, 4 Hun 252 [1875]; Mosher v. Carpenter, 13 Hun 602 [1878] ; Carey v. Miller, 25 Hun 28 [1881]; National Exch. Bank v. Veneman, 43 Hun 241 [1887]; Head v. Smith, 44 How. Prac. 476 [1872]; Hutkoff v. Moje, 20 Misc. 632 [1897]).
The law is well established in New York State that fraud as to the character of the paper signed is a good defense against a bona fide holder of negotiable paper if the signer was free from negligence.
According to the undisputed evidence at the trial the defendant maker of the note, Mike Fazzari, signed a note which was represented to him by the drawee, John Wade, Jr., to be a statement of wages paid to him by the defendant for John Wade’s use in filing John Wade’s income tax return. The defendant’s wife, who admittedly can read and write and speak and understand the English language, was no further away than the next room at the signing of said note. There appears to be no reason shown by the evidence in this case why the defendant could not have had his wife read the note and tell him what it was before he signed it. The court holds that the defendant was negligent in this respect and therefore, the alleged fraud as to the character of the paper signed cannot and does not constitute a good defense in this case.
We now come to the only remaining question to be decided and that is whether under subdivision 4 of section 91 of the Negotiable Instruments Law, the plaintiff had notice of any infirmity in the instrument or defect in the title of the person negotiating it to such extent that, under subdivision 3 thereof, plaintiff did not take this note in good faith and for value.
*354 As to value, the evidence is clear that the plaintiff bank paid the full face value of the note at the time of negotiation. The evidence indicates that the plaintiff did have verbal notice approximately three and one-half months before accepting the note for full value and that, at the time of the acceptance of the note by the plaintiff bank, the verbal notice had been forgotten. This verbal notice was given by the defendant who speaks broken English and claims in his direct testimony that he told Kenneth Gilbert, cashier of said bank, that “If John Wade went to the Bank to try to cash a note not to give him any money under my name, that I had been tricked and it wasn’t the paper I thought I signed, he said not to worry and I said, ‘ thanks ’ and walked out. ’ ’ On cross-examination, he said he told Kenneth Gilbert, ‘1 Has anyone come in here to get money in my name and I said, no give money to anyone under my name because I have been tricked to sign a note when I thought I signed a paper for income tax. I said especially John Wade no give any money under my name and he said, not to worry and I said, ‘ thanks ’ and walked out.”
Kenneth Gilbert testified that he did not know Mike Fazzari and that he forgot the conversation until his memory was refreshed at the time of the trial. Is this failure of memory such negligence or lack of diligence sufficient to hold that the receiver of this note is not a holder in good faith but is in bad faith or dishonest?
In Lord v. Wilkinson (56 Barb. 593 [1870]) involving the negotiation of stolen papers, the court charged the jury that the defendants once having had notice, were bound by it although forgotten, and that such notice destroyed the defendants’ claim to be purchasers in good faith; defendants appealed and alleged this as error and moved for a new trial. It was held that the charge was too broad as to .the effect and consequences of a notice once given, upon the subsequent conduct and position of the parties notified. This court cited the case of Magee v. Badger (34 N. Y. 247, 249 [1896]) where the court said “the rights of the holder are to be determined by the simple test of honesty and good faith, and not by any speculated issue as to his diligence or negligence.” “ He is not bound to be on the alert; he does not owe the duty of active inquiry to avert the imputation of bad faith.” This case has been consistently cited by subseqent court decisions and these principles have often been restated in varying forms even as recently as April 8, 1959, in the case of Dyer & Co. v. Monitz (16 Misc 2d 1033, citing Magee v. Badger, supra).
*355 In the case of Raphael v. Bank of England (17 CB 161), it was held that the circumstances of the banker for omitting or forgetting to look for the notice was no evidence of mala fides.
In Gramatan Nat. Bank & Trust Co. v. Mikolojczak (142 N. Y. S. 2d 564, 566 [1955]) the court said “ the rights of the holder are to be determined by the simple test of honesty and good faith, and not by speculations in regard to the purchaser’s diligence or negligence.” “ These principles have never been questioned and have been restated time and again ’ ’, citing Magee v. Badger (supra). See, also, Manufacturers & Traders Trust Co. v. Sapowitch (296 N. Y. 226, 230 [1946]) involving a loan on security of stolen negotiable bonds where holder of same was held to be a bona fide holder. The court cites Magee v. Badger {supra) stating that “ These principles have often been restated in varying forms and have never been questioned in the decisions of this court.”
In Munnich v. Jaffe (164 App. Div. 30, 32 [1914]) the court said: “ It is an illustration of the policy to protect negotiable instruments, under the rule that where one of two innocent persons must suffer, the loss must fall upon him who reposed the confidence. (See Page v. Krekey, 137 N. Y. 307, 313.) ”
In the instant case, the defendant, Fazzari, reposed confidence in John Wade, who had worked for him as an employee, driving his truck for a period of only 25 weeks and did not take the precaution to have his wife, who was in the next room, examine the note before he signed it.
In this connection it should be noted that the defendant testified that he employed John Wade, Jr., for 25 weeks at $20 a week which would total $500 and that the note is for $400. On cross-examination defendant was able to read' the figures $400. He testified he thought the paper he signed was to be used by John Wade, Jr., in making his, Wade’s, tax return, to show wages paid him by defendant. If defendant took the precaution to examine the paper and could and did read the figures $400 knowing he had paid Wade a total of $500 instead of $400, this should have alerted him to the possibility that the paper he signed was not what John Wade, Jr., represented it to be.
If the rule in cases of this nature involving negotiable instruments as laid down by the numerous court decisions in this State even as recent as April 8,1959 were otherwise, the bankers and other takers of commercial papers would take at their own risk and it would result in negotiable documents losing their negotiability.
*356 The court finds no evidence whatsoever tending to show that the plaintiff bank in this case was guilty of anything more than negligence and certainly was not guilty of bad faith or dishonesty.
The court finds for the plaintiff, with interest and costs of this action. Let judgment enter accordingly.