■ FIRST NATIONAL BANK OF ODESSA, Respondent, v. MIKE FAZZARI, Appellant.— Appeal by the defendant from a judgment of the County Court of Schuyler County in favor of the plaintiff, after a trial before the court without a jury, in an action upon a promissory note. Concededly the defendant signed a promissory note dated December 16, 1957, in the sum of $400, payable to John Wade, Jr., six months after date at the Glen National Bank, Watkins Glen, New York. The defendant is unable to read or write the English language. There is undisputed testimony that Wade made out the body of the note and asked defendant to sign it upon the representation that it was merely a statement of wage earnings while he was working for defendant, to be used for income tax purposes. Defendant's testimony that he owed Wade nothing and that there was no consideration for the note is likewise without dispute. The sole question presented on the appeal is whether or not the plaintiff was a holder in due course, and that in turn, depends upon whether or not the plaintiff had notice of an infirmity in the instrument before the note was negotiated to the plaintiff bank. The defendant testified that he personally orally gave notice to the cashier of the plaintiff bank in the following manner: " I told him that if John Wade went to the bank to try to cash a note not to give him any money under my name, that I had been tricked and it wasn't the paper I thought I signed, but he said not to worry and I said, 'thanks' and walked out." This was in January of 1958. This testimony is not disputed, and the cashier in substance admitted the conversation but testified that he had forgotten it when he personally handled the negotiation of the note on April 10, 1958. If the plaintiff bank was not a holder in due course the defense of lack of consideration is available to the defendant. Section 91 of the Negotiable Instruments Law provides: " A holder in due course is a holder who has taken the instrument under the following conditions: * * * 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Upon the undisputed testimony in this case we do not see how it can be said that the plaintiff " had no notice of any infirmity in the instrument ". We interpret the opinion of the court below as finding that the plaintiff bank had oral notice but that its officer had forgotten it. The court below seemed to feel

that bad faith or dishonesty on the part of the plaintiff must be shown. Appellant does not claim bad faith nor dispute the purchase for value, but relies solely upon the notice of infirmity. The evidence and the findings indicated by the lower court's opinion not only demonstrate a warning not to take any paper signed by the defendant, but specifically called attention to a note payable to John Wade. We do not think the case turns upon a question of good or bad faith, but on the question of notice, and under the statutory definition outlined above the plaintiff is not a holder in due course, and must resort to the indorsers, whom it did not sue in this action, for payment of the note. Respondent relies upon *Lord* v. *Wilkinson* (56 Barb. 583) in support of the "forgotten notice" doctrine. This case was decided before the Negotiable Instruments Law was in effect. It is also a matter of common knowledge that "modern reminder systems" are in common use by commercial establishments which render it very difficult to "forget" if a memo is made at the time of notice and a check made at the time of the negotiation of the instrument. The "no notice" requirement of the statute controls here, and it cannot be found upon this record that the plaintiff bank had "no notice." Judgment reversed, on the law, and judgment directed for the defendant, with costs. Bergan, P. J., Coon and Gibson, JJ., concur; Herlihy and Reynolds, JJ., dissent, and vote to affirm, in the following memorandum: There is no question raised of bad faith on the part of the plaintiff but rather that the conversation mentioned in the majority decision was sufficient under the section of the Negotiable Instruments Law to constitute notice of infirmity. The defendant was not a customer of the plaintiff bank and the record seems to infer that in accepting the note, the plaintiff bank was relying upon its customer Wellington Doane, one of the indorsers thereon. When the action was commenced, the bank could have made the indorsers party defendants or thereafter the defendant could have made them parties and thus could have determined in one action the rights of all of the prospective litigants. (Civ. Prac. Act, § 193.) It is difficult to perceive that the section of the Negotiable Instruments Law was intended to construe such acts as herein set forth as sufficient notice to the plaintiff who was under no obligation to the defendant. The conversation took place about three months before the note was discounted by the plaintiff and it is apparent that at the time of discounting the note, the conversation had been forgotten by the cashier. Certainly such a type of notice could not be permanently binding upon the plaintiff. When it discounted the note it did so at its customer's request. In *Lord* v. *Wilkinson* (56 Barb. 593) it was admitted that notice had been received before the purchase of the stolen notes and the court said at page 596: "'The defendants once having had notice are bound by it, although the notice may have been forgotten' * * * If the rule is well founded, that notice once given is good forever — that knowledge acquired when notice is given, is conclusive evidence of knowledge possessed when the notes were bought — then this charge is correct. But if the *bona fides* of the defendants must be judged of from their acts, purposes and knowledge as they existed upon the day of the purchase, then the notice served is only prima facie or presumptive evidence of *mala fides,* and may be rebutted by proof that the notice was lost, or its existence and contents forgotten". The court held the charge was too broad, that the rule as to "*bona fides*" should have been charged and accordingly granted a new trial. (See *Graham* v. *White-Phillips Co.,* 296 U. S. 27, 32.) The word "notice" as used in this section should be given a reasonable interpretation. The facts herein raise a serious question as to whether the plaintiff bank was under any obligation to the defendant and that he was not justified in relying upon such an indefinite statement as "don't worry", having in mind that his instruction

to the cashier was "if John Wade went to the bank". There is no claim that John Wade did go to the bank at the time the note was discounted. Assuming such conversation constituted actual notice to the plaintiff in accordance with the section, it is equally apparent that the subsequent acts on the part of the plaintiff were in good faith for a valid consideration and the note was discounted in reliance upon its customer's indorsement. The record justifies the finding of the lower court that the acts of the plaintiff were in good faith and that while it had notice, it was unintentionally overlooked or forgotten. It could be further found that the notice given by defendant to plaintiff in January, 1958, was not of sufficient clarity or definiteness to alert the bank officials at the time of the subsequent transaction in April, 1958. The adequacy of the notice was not considered by the lower court. The defendant, upon payment of the judgment, will be entitled to possession of the note for whatever recourse he may have against the indorsers thereon. Judgment should be affirmed. [22 Misc 2d 351.]