Louis B. Heller, J.
This is an 'action by an assignee of an installment contract for the purchase price of goods sold and delivered. The parties have stipulated to the following facts: On April 22, 1963, a salesman representing the seller, Educational Guild, Inc., presented himself to the defendant at defendant’s home. Claiming to be connected with the Board of Education and emphasizing his official position, he convinced the buyer that .she wa,s required to purchase certain books *1008 for the use of her school-age child. In reality, the seller was in no way connected with the Board of Education but because of these misrepresentations the defendant was induced to enter into an installment sales contract for the purchase of the books. The books covered by the contract were never delivered to defendant.
On April 30, 1963, the plaintiff, Nassau Discount Corp., took an assignment of the contract for value. The reverse side of the contract contains several conditions one of which directly relates to the assignment and states: “Buyer will settle all
mechanical, service and other claims of whatsoever character with respect to the sale evidenced hereby, directly with Seller (and not with any such Assignee) and will not set up any such olaim(s) as a defense or counterclaim to any action for payment or possession which maybe brought by an Assignee who acquires this Contract in good faith and for value ’ ’.
Thereafter, on May 5, 1963, plaintiff mailed to defendant a notice of assignment in conformance with section 403 (subd. 3, par. [a]) of the Personal Property Law requesting the buyer to notify the assignee in writing within 10 days from the date of the mailing of the notice of any defense that she might have arising out of the sale or otherwise be barred from asserting such defense in an action by the assignee. Plaintiff received no written response to its notice of assignment. However, defendant upon receipt of the notice immediately returned plaintiff's coupon-payment book by mail. Defendant has since refused to pay any installments of the contract and thereupon plaintiff instituted this lawsuit.
The broad issue presented for determination by this court is whether defendant is barred by the waiver of defenses clause contained within the contract from asserting her defenses of fraud and nondelivery against plaintiff assignee. Subsidiary to the determination of this broad issue is whether the fraud alleged is fraud in factum, the real defense of fraud, or fraud in the inducement, and furthermore, whether plaintiff takes subject to the real defense of fraud.
Fraud in the factum exists where one is induced to sign an instrument of a different nature or character than that he was led to believe was before him. (Chapman v. Rose, 56 N. Y. 137, 140; First Nat. Bank of Odessa v. Fazzari, 22 Misc 2d 351, 353.) In the present case defendant does not assert that she was deceived as to the nature of the paper she was signing but rather that she was induced to sign the contract through the fraudulent misrepresentations of the salesman. Therefore, the fraud involved in this case is fraud in the induce *1009 ment of the contract and we need not decide whether plaintiff takes subject to the real defense of fraud.
More accurately phrased, the issue is whether defendant has waived her defenses of fraud in the inducement of the contract and nondelivery. The controlling statute in the resolution of this issue is section 403 (subd. 3, par. [a]) of the Personal Property Law which provides in substance that no contract shall contain any provision whereby the buyer agrees not to assert against an assignee a claim or defense arising out of the sale, but it may contain such a provision as to an assignee who acquires the contract in good faith and for value and to whom the buyer has not mailed written notice of the facts giving rise to a claim or defense within 10 days after the assignee has mailed notice of the assignment to the buyer. Paragraph (a) of subdivision 3 further provides stringent requirements for the contents of the notice of assignment, all of which have been complied with by plaintiff.
In response to plaintiff’s notice of assignment defendant merely returned plaintiff’s coupon booklet. This could hardly be said to amount to the mailed tvritten notice of facts giving rise to a claim or defense which the statute prescribes that the buyer give in order to preserve his defense against the assignee. At best, the return of the booklet might only inform the assignee that defendant was breaching her contract and would refuse to make any payments thereunder. This, the assignee might imply, but not the facts giving rise to the purchaser’s refusal. Therefore, on the technical ground of giving the assignee proper notice of a defense, the defendant cannot succeed.
However, more important questions involving public policy and social justice come to the foreground of this ease. Does section 403 permit a waiver of the defense of fraud in the inducement, and assuming that this be answered in the affirmative, does plaintiff measure up to the standard of a good faith purchaser of the contract? A perusal of the common law preceding the enactment of section 403 is helpful in resolving the above.
Under case law, New York courts adhered to the majority view that a waiver of defenses clause is valid. (National City Bank v. La Porta, 109 N. Y. S. 2d 143.) This view proceeded on the theory that the buyer was estopped by contract from asserting his defenses. However, it was firmly held that where fraud permeated the contract so as to vitiate it, the estoppel by contract was ineffectual. In such a case the buyer could only be estopped by his conduct which required (1) that the *1010 buyer signed the contract with the knowledge that it was going to be assigned; (2) that the assignee relied on the representation ; (3) that the assignee had no knowledge of the fraud of the seller; and (4) that the buyer signed the contract in order to induce the assignee to purchase the contract or to enable the seller to assign it. (President & Directors of Manhattan Co. v. Monogram Associates, 276 App. Div. 766.) Seldom could it be found that a buyer affirmatively, knowingly and intentionally made such a waiver and thus the unwary buyer or the buyer lacking the legal ability to analyze the intricate and minute conditions contained in the usual printed form contract was adequately protected from the operation of estoppel by conduct where fraud was involved. The fear of the consequences of indiscriminately allowing such waivers by unknowing purchasers, especially those in the lower income classes who are barely able to maintain their own subsistence and who most heavily rely on installment purchases, pervaded the thinking of our courts.
Unfortunately waivers of defenses that the buyer might assert against the assignee of an installment contract for the purchase of a motor vehicle or other goods are now sanctioned by statute providing the requirements of the statute are strictly adhered to. (Personal Property Law, § 302, subd. 9; § 403, subd. 3, par [a].) Such waivers are permitted even where the defense of fraud in the inducement is involved and where there would have been no estoppel by conduct under prior law. (Mohawk Nat. Bank v. Chalifaux, 18 A D 2d 864, revg. 33 Misc 2d 987; Bankers Commercial Corp. v. Guerra, 11 A D 2d 654.) The Legislature has seen fit to allow waivers in order to induce financial institutions to readily accept assignments of these contracts thus providing the underlying financial foundation for the installment sales business.
Even so, the rationale underlying the common-law rule and the fears evidenced thereunder should not go unheeded. A balance must be struck between the promotion of installment sales financing and the protection of the consumer. As was pointed out in 1957 by the Governor of the State of New York, the purpose of the Retail Instalment Sales Act is to afford broader protection to the consumer. (Governor’s Memorandum, N. Y. State Legis. Annual, 1957, pp. 503-504.) The court concurs in this purpose and feels that it should seek to implement it to the utmost. In this objective the court is not alone, for the courts of New York have been loath to countenance waivers where the statute has not been strictly complied with and have placed the burden of proof of compliance on the assignee.
*1011 In D. P. C. Corp. v. Jobson (15 A D 2d 861) the burden of proof was placed on the assignee to show that it received no notice in writing from the buyer, within the requisite time, of a defense arising out of the sale; and in Zenith Fin. Corp. v. Jolly Gen. Distr. (42 Misc 2d 821), the burden was again cast upon the assignee, this time to show that the notice of assignment it gave to the buyer was proper in all respects. Finally, in Arena v. Universal C. I. T. (N. Y. L. J., March 26, 1959, p. 9, col. 8) the court refused to find that the assignee was a good faith purchaser where it had notice that the seller had no right to enter into a contract of resale with the defendant buyer and accordingly denied recovery to the assignee even though the contract contained a waiver of defenses clause.
Our courts have justifiably scrutinized these waivers with care to see that the statutory requirements have been complied with and we ought do no less especially when a waiver of the defense of fraud is involved. The assignee of a contract affected with fraud must be held to the highest standard of good faith before he will be allowed to benefit therefrom. Where there is any shadow of doubt impugning the bona fides of the assignment the risk of fraud and misrepresentation of the salesman should be the risk of the business, rather than the risk of the unwary buyer. (Buffalo Ind. Bank v. De Marzio, 162 Misc. 742, 745, revd. on other grounds 6 N. Y. S. 2d 568.)
Good faith necessarily requires that the assignee be ‘' not so identified with the seller, to an extent that it could fairly be said that the dealings of one are inextricably interwoven with that of the other. ’ ’ (Public Nat. Bank & Trust Co. v. Fernandez, 121 N. Y. S. 2d 721, 724.) The court further stated: “ Certain unmistakable indicia point inevitably that this plaintiff, far from being a bona fide assignee of a chose in action, was in fact a principal in the transaction”. It was pointed out that the contract provided that all installments be paid to the plaintiff assignee; that the title to the merchandise was to be retained by the holder, who was defined as either the seller or the assignee; that the assignment was made even before the goods were delivered to the buyer and that the sale and assignment were physically encompassed within the same document. The court concluded: “From all the above it would appear that the bank, rather than being a bona fide purchaser of the contract in question, was to all intents and purposes a party to the orginal agreement.”
The facts in this case are not unlike those before the court in Public Nat. Bank & Trust Co. v. Fernandez. Here the contract is a printed form furnished by the plaintiff to the seller. *1012 On the face of the contract are several terms. Clause “ B ” states that the installments “ shall be paid to Nassau Discount Corp. * * * for its acccount as assignee hereof or for the account of Seller or to such other person or place as may be designated in writing by Nassau Discount Gorp. ’ ’ (Emphasis supplied.) Clause “ F ” contains an unconditional promise by the buyer to pay all installments to the assignee, specifically named as Nassau Discount Corp. Also, the buyer promises to make such payments with the full understanding that Nassau Discount Corp. “will be requested by the Seller to finance the sale evidenced by this Contract and to take an assignment thereof.” Under condition “ 1 ” on the reverse side of the contract, title to the goods is retained by the seller and his assignees until all amounts under the contract are paid in full. On the same side of the document is the assignment, dated April 30, 1963, in which the name of Nassau Discount Corp. is printed in bold letters as the assignee. The assignment states that all of the goods described in the contract were delivered and accepted by the buyer on the same date that the assignment was made.
Thus, all the elements that pointed to an implied agency in Public Nat. Bank & Trust Co. v. Fernandez (supra) are present. In substance, plaintiff armed Educational Guild, Inc., with an instrument containing terms and conditions specifically designed to defeat the rights a buyer would have against an assignee of the contract. This court has no doubt that the seller and plaintiff contemplated before the sale was ever consummated, that plaintiff would take an assignment of the contract. The contract inevitably points to a course of dealing between National Discount Corp. and Educational Guild whereby Educational Guild was authorized to procure installment sales and immediately assign the contract to the plaintiff. Such a finding is supported by the numerous times that National Discount is named as a specific assignee in the contract and from the fact that both the assignment and delivery of the goods are recited to have taken place the very same day, as well as all the other facts above alluded to.
When contracts are supplied by an assignee, complete with the assignee’s name printed thereon, it is obvious that the assignee is a specific assignee, vitally interested in the sale, so closely related that it is almost as if the assignee were “ looking over the parties’ shoulders when the sale was consummated.” (General Motors Acceptance Corp. v. Associates Discount Corp., 38 N. Y. S. 2d 972, 978.) Form contracts supplied by a specific assignee containing waiver of defenses clauses inescapably point *1013 to the conclusion of a preformed intention upon the part of the assignee to defeat the rights of the buyer so as to negate the requirement of good faith. (Glens Falls Nat. Bank & Trust Co. v. Sansivere, 136 N. Y. S. 2d 672, 674.)
It can fairly be said that assignee and seller in the circumstances of this case were so inextricably intertwined as to impugn plaintiff’s good faith status. This court, therefore, finds as an ultimate fact that an implied agency existed under the terms of the contract and that plaintiff is subject to the defenses of fraud in the inducement and nondelivery.
Defendant is entitled to judgment dismissing the complaint. The parties having waived findings of fact and conclusions of law the foregoing constitutes the decision of this court pursuant to CPLR 4213. Let judgment be entered accordingly.