**In re INTERSTATE STORES, INC., formerly known as Interstate Department Stores, Inc., et al., Debtors.**

**No. 86 Civ. 7285 (MGC).**

United States District Court, S.D. New York.

March 25, 1987.

---

Van Wagoner & Stevens, Salt Lake City, Utah by Lewis T. Stevens, for appellants Capital Tracing, Inc. and Ten General Creditors; O'Melveny & Myers, New York City by Robin Dahlberg, of counsel.

Shea & Gould, New York City by Daniel L. Carroll, Lester H. Yassky, Michael E. Emrich, for appellee debtors.

## MEMORANDUM OPINION AND ORDER

CEDARBAUM, District Judge.

This is an appeal from a final order of the Bankruptcy Court granting appellee's motion for a declaratory judgment that certain stock certificates unclaimed by general creditors pursuant to the terms of a final bankruptcy decree became the property of the reorganized company. For the reasons discussed below, the judgment is affirmed.

## FACTUAL BACKGROUND

In 1974, Interstate Stores, Inc. and its various subsidiaries (collectively "Interstate") filed for reorganization under Chapter X of the United States Bankruptcy Act of 1898 (the "Act"). In June 1974, the bankruptcy court appointed an Independent Trustee and an Additional Trustee to operate and manage Interstate's property.

On March 11, 1977, the Independent Trustee filed a proposal for Interstate's reorganization plan. On March 27, 1978, Bankruptcy Judge Ryan confirmed a modified version of the reorganization plan (the "Plan"). Pursuant to the Plan, the newly reorganized entity was named Toys "R" Us ("Toys").

The Plan provided that each entity in the category of "Interstate General Unsecured Unsubordinated Creditor" ("General Creditor") would receive cash equal to 5.7% of its claim, and shares of Toys new common stock equal to 94.3% of its claim on the basis of one share for each $10 worth of claim. Only the shares and dividends in the form of shares (collectively "Shares") are at issue. The parties do not raise an issue with respect to any cash. The appellants are ten of these General Creditors (collectively "Creditors") along with Capital Tracing, Inc. ("Capital") which is acting on behalf of the Creditors.

Paragraph 15.8 of the Plan provided:

> Any person who fails to collect any cash or securities within six years from the date such cash or securities is distributable to such person shall forfeit all rights thereto and the cash or securities shall be surrendered to the Reorganized Company.

On June 3, 1980, the bankruptcy court issued the final bankruptcy decree ("Final Decree"). Paragraph 3 of the Final Decree provided:

> That *all holders of allowed claims*, other than holders of securities, *shall release their claims*, and the holders of securities shall present or surrender their securities *within five (5) years after the date of the entry of this final decree after which date no such claim* or stock *shall participate in the distribution under the Plan; the securities or cash remaining unclaimed at the expiration of the time herein fixed shall be deemed the property of the Reorganized Corporation, free and clear of any and all claims and interests.* (emphasis added).

The bankruptcy court ordered that notice of the entry of the Final Decree be published in the *The New York Times* (the *"Times"*).

Throughout the five year period from June 3, 1980 until June 3, 1985, all Shares not physically transferred to General Creditors remained in the possession of Toys' transfer agent.

All General Creditors were given the notice required by the bankruptcy law. In July 1974, the debtor mailed to every General Creditor at its address in Interstates' files (the "record address") a notice to file a proof of claim. A similar notice was published in the *Times* and in *The Wall Street Journal* (the *"Journal"*). In February 1978, a copy of the Plan was mailed

to every General Creditor at its record address together with notice of the hearing to confirm the Plan and a ballot to vote on the Plan. Notice of the hearing was published in the *Times* and the *Journal.* In April 1978, notice of the Plan's confirmation was mailed to the General Creditors and published in the *Times* and the *Journal.* Appellants do not dispute the adequacy of notice.

The stock certificates were printed in the individual names of the General Creditors, and were held by the transfer agent in accounts identified by the names of the General Creditors. Beginning in April 1978, the transfer agent mailed to all General Creditors their distributive shares of Toys. Postal authorities returned some of the mailed certificates as undeliverable.

After the Final Decree was issued, Toys declared five 50% stock dividends on its common stock, in each of the five years between 1980 and 1984. The transfer agent mailed corresponding stock dividend certificates to all General Creditors at their record addresses. In each of these five years, postal authorities returned a small proportion of the stock dividend certificates as undeliverable.

During the years before the June 3, 1985 bar date, Capital, a company specializing in locating unclaimed property for its owners, obtained over 90,000 Toys Shares on behalf of its clients. In September 1985, several months after the bar date, Capital obtained a substantial number of Toys Shares for a General Creditor. After the bar date, Capital sought to obtain 29,129 Shares on behalf of the Creditors.

On March 11, 1986, the bankruptcy court reopened the case for the limited purpose of permitting Toys to seek a declaratory judgment regarding the status of the Shares. Bankruptcy Judge Blackshear, in his decision dated August 7, 1986 ("Decision"), upheld the five year bar date, and explicitly rejected Capital's argument that "the disbursing agent, as agent acting on behalf of all the claimants, including all future claimants, claimed all of the shares in question prior to either bar date." (Decision at 8). Judge Blackshear ruled that

"Toys' motion for declaratory judgement holding that the unclaimed shares remaining with the disbursing agent had reverted to Toys is GRANTED." (Decision at 10). This appeal followed.

DISCUSSION

The parties agree that the five year bar date is binding and enforceable on all parties, and that the Shares reverted to Toys if the claims were not "released" and the Shares remained "unclaimed" pursuant to Paragraph 3 of the Final Decree. Appellants argue that the bar date does not apply to them or their claims because even though the Shares were in the possession of the transfer agent throughout the five year period, the Creditors released their claims, and claimed the Shares long before the five year bar elapsed. Appellee responds that Bankruptcy Judge Blackshear correctly held that the Shares remained unclaimed throughout the five year period, and thus reverted back to Toys on the bar date. The sole issue on appeal is whether the Creditors released their claims and claimed the Shares before the bar date of the Final Decree.

In support of their position, appellants argue that the Creditors released their claims within the meaning of Paragraph 3 of the Final Decree in that "someone at Toys believed releases were obtained, because the subject debts of Interstate Stores were extinguished with the issuance in April 1978 of Toys shares," (Appellants' Br. at 8–9), and because "[f]rom that time forward, Toys has not reported any of the debt on its financial statements, but has publicly reported all of the shares, including [those returned by postal authorities], as issued and outstanding as provided by the Final Decree." (*Id.* at 9). Appellants argue, in essence, that because appellee represented to the world that the debt had been released, Toys is precluded now from arguing that the debt has not been released. Appellants offer no legal authority for this estoppel argument, nor do they claim any detrimental reliance, an essential element of estoppel. Furthermore, appellants' interpretation of the phrase "all holders of allowed claims ... shall release their

claims" ignores the plain meaning of that phrase. "[A]ll holders ... shall release" suggests that some act of the claim holders is required to effect the necessary release. The appellants performed no such act.

Turning to the term "unclaimed," as used in the Final Decree, the parties agree that this term is not defined in the Final Decree, the Bankruptcy Rules, or the Act. Appellants argue that because "unclaimed" is not defined in any of these clearly applicable sources, and because "[i]n cases involving securities, claims to the securities hinge on the delivery of those securities to the claimant," (Appellants' Br. at 9), the UCC definition of "delivery" of securities should be used to determine whether the shares were claimed by the Creditors. Appellee urges that the parties and the bankruptcy court intended a common-sense definition of "unclaimed," and looks to the *Webster's Collegiate Dictionary* definition of "claim," which appellee quotes as follows:

> to ask for esp. as a right ... to assert in the face of possible contradiction ... a demand for something due or believed to be due ...

Appellants look to the definition of "delivery," as the term is used to determine when title passes to a purchaser of securities under Section 8–313 of the UCC of New York and New Jersey. Appellants' position lacks a solid foundation. A passive creditor is not accurately analogized to an active purchaser. A purchaser must take affirmative action to make a purchase. If these appellants had acted like purchasers by taking affirmative action, they would not need to strain to read "remaining unclaimed" to mean "remaining undelivered" to the purchaser. Appellants were never analogous to purchasers of the Shares. They never agreed to accept the offered Shares. They were trade creditors of a bankrupt company that was reorganized. They had five years in which to come forward to claim Shares in the reorganized company. They failed to do so. Therefore, those Shares "remained unclaimed" on the bar date and reverted to the reorganized company.

Finally, appellants argue that because Toys erroneously distributed Shares to one General Creditor after the bar date, Toys should now be required to do the same for the untimely Creditors. This contention is without merit.

CONCLUSION

Since the Creditors did not "release" their claims and the Shares remained "unclaimed" at the bar date, the judgment is affirmed.

SO ORDERED.