FEINBERG, Chief Judge:
 

 Capital Tracing Company, Inc. (“Capital”) appeals from an order of the United States District Court for the Southern District of New York, 72 B.R. 261, Miriam Goldman Cedarbaum, J., affirming an order of the United States Bankruptcy Court for the Southern District of New York granting a motion by Interstate Stores, Inc. (“Interstate”), now known as Toys “R” Us, for declaratory judgment that unclaimed shares of Toys “R” Us stock remaining with the transfer agent beyond the bar date fixed in the final bankruptcy decree had reverted to Toys “R” Us. For the reasons indicated below, we affirm the district court’s order.
 

 Background
 

 There is no dispute as to the basic facts of the case as stated by the district court. In 1974, Interstate and its various subsidiaries filed for reorganization under Chapter X of the Bankruptcy Act. A modified plan of reorganization (the “Plan”) was confirmed by the bankruptcy court in March 1978. Under the Plan, each former Interstate General Unsecured Unsubordi-nated Creditor (a “General Creditor”) was entitled to receive cash equal to 5.7% of its claim and shares of stock in Toys “R” Us, the reorganized company, equal to 94.3% of its claim on the basis of one share for each $10 of claim. Paragraph 15.8 of the Plan provided, however, that:
 

 Any person who fails to collect any cash or securities within six years from the date such cash or securities is distributable to such person shall forfeit all rights thereto and the cash or securities shall be surrendered to the Reorganized Company.
 

 Notice of confirmation of the Plan was mailed to the General Creditors and published in The New York Times and The Wall Street Journal.
 

 Following confirmation of the Plan, Toys “R” Us commenced distribution, through its transfer agent, of the shares distributable to the General Creditors. The names of the General Creditors were printed on stock certificates which were mailed by the transfer agent to each General Creditor. Some of the certificates, however, were returned as undeliverable. The transfer agent maintained possession of the returned certificates in accounts identified by the names of the individual General Creditors.
 

 On June 3, 1980, the final bankruptcy decree (the “Final Decree”) was entered by the bankruptcy court. The Final Decree established a five-year bar date for claims on Toys “R” Us shares. Paragraph 3 of the Final Decree provided:
 

 That all holders of allowed claims, other than holders of securities, shall release their claims, and the holders of securities shall present or surrender their securities within five (5) years after the date of entry of this final decree after which date no such claim or stock shall participate in the distribution under
 
 *18
 
 the Plan; the securities or cash remaining unclaimed at the expiration of the time herein fixed shall be deemed the property of the Reorganized Corporation, free and clear of any and all claims and interests.
 

 The Final Decree provided for notice of the entry of the decree by mail and by publication in The New York Times.
 

 Toys “R” Us declared several stock dividends in the period following the Final Decree and the transfer agent mailed the stock dividend certificates to the General Creditors. Again, a number of certificates were returned as undeliverable.
 

 Beginning in 1984, appellant Capital, a company engaged in the business of finding unclaimed property, set out to locate the General Creditors who had not yet received their stock certificates. Prior to the June 3, 1985 bar date, Capital obtained approximately 90,000 shares of Toys “R” Us stock on behalf of General Creditors. Subsequent to the bar date, Capital was able to obtain shares on behalf of Ford Aerospace and Communications Overseas, Inc., but was unable to obtain shares on behalf of another ten creditors.
 

 Following the bar date, Toys “R” Us sought a declaratory judgment in bankruptcy court regarding the status of the unclaimed shares. In August 1986, Bankruptcy Judge Cornelius Blackshear held that the unclaimed shares remaining with the transfer agent had reverted to Toys “R” Us. Judge Blackshear rejected Capital’s argument “that the disbursing agent, as agent acting on behalf of all the claimants, including all future claimants, claimed all of the shares in question prior to either bar date.” The bankruptcy judge noted that if Capital’s argument were sustained the bar date envisioned in Section 204 of the Bankruptcy Act would be rendered a nullity. Capital appealed from this decision, and in March 1987 the district court affirmed the bankruptcy court order. Judge Cedarbaum concluded that since the creditors on whose behalf Capital was acting had failed to come forward to claim their shares prior to the bar date, the shares had reverted to Toys “R” Us. Capital appeals from the district court order.
 

 Discussion
 

 Capital argues that the ten General Creditors it represents had met the requirements for obtaining shares in the reorganized company prior to the bar date and that therefore the creditors are entitled to possession of “their” shares. It contends that no affirmative action was required of the General Creditors to prevent the application of the bar date on the facts of this case, because the sole requirement established by'Paragraph 3 of the Final Decree for participation in the distribution under the Plan was that the creditors release their claims. Since all debts of Interstate were extinguished in 1978 as a matter of law, Capital asserts that this requirement was met. Capital acknowledges that a second possible condition for participation in the distribution was established hy the language in Paragraph 3 that provides that the securities “remaining unclaimed” as of the bar date revert to the reorganized company. It argues, however, that the disputed certificates were effectively delivered to the General Creditors pursuant to § 8-313 of the Uniform Commercial Code by virtue of the bankruptcy trustee’s delivery of the shares to the transfer agent and that therefore the shares did not remain “unclaimed.” Capital adds that it was the duty of Toys “R” Us and the trustee to deliver the certificates to the General Creditors, asserting that the creditors had no affirmative obligation to come forward and claim their shares.
 

 While Capital’s argument is ingenious, it is also flawed. Sections 204 and 205 of the Bankruptcy Act made clear that a final bankruptcy decree could set a date not sooner than five years after the final decree after which unclaimed securities would revert to the reorganized company. See
 
 Duebler v. Sherneth Corp.,
 
 160 F.2d 472, 474-75 (2d Cir.1947); 6 Collier on Bankruptcy ¶ 9.22 (14th ed. 1978). The Final Decree set such a date. Allowing former Interstate creditors to compel distribution of Toys “R” Us stock beyond the June 3, 1985 bar date would directly conflict with the express language of the Final Decree and the purpose of the bar date.
 

 
 *19
 
 While it does not appear on the facts of this case that creditors were required to take any affirmative action to release their claims against the debtor, we believe that the plain language of the Final Decree establishes that they were required to take affirmative steps to claim their shares in the reorganized company. The parties dispute the meaning of the term “unclaimed” in Paragraph 3 of the Final Decree. Capital argues that the definition of delivery or transfer of a security to a purchaser under UCC § 8-313 applies and that UCC caselaw supports the General Creditors’ claims. Toys “R” Us argues that the bankruptcy court intended a common-sense definition of the term. It cites the definition of the word “claim” in Webster’s New Collegiate Dictionary (9th ed.):
 

 to ask for esp. as a right ... to assert in the face of possible contradiction ... a demand for something due or believed to be due ...
 

 Judge Cedarbaum concluded that Capital’s “position lacks a solid foundation. A passive creditor is not accurately analogized to an active purchaser. A purchaser must take affirmative steps to make a purchase.” We agree that a common-sense meaning of the term “unclaimed” should be applied in interpreting Paragraph 3. This conclusion is fortified by the authority that “purchase” within the meaning of UCC §§ l-201(32)-(33) requires a “voluntary transaction” and does not include transactions undertaken pursuant to court order. See
 
 National Shawmut Bank of Boston v. Vera,
 
 352 Mass. 11, 223 N.E.2d 515, 517 (1967);
 
 Mazer v. Williams Bros. Co.,
 
 461 Pa. 587, 337 A.2d 559, 562 (1975). See also UCC § 8-313 (1977 Official Comment 1) (“Transfers by operation of law are excepted because they are not transfers to a ‘purchaser.’ ”).
 

 Applying that meaning, it is clear that the shares in question remained unclaimed as of the bar date. Furthermore, it does not appear that Toys “R” Us can be faulted for failing to deliver the shares. Capital does not claim that Toys “R” Us failed to comply with the notice requirements ordered by the bankruptcy court. Moreover, Toys “R” Us made a reasonable effort to deliver stock certificates to former creditors in compliance with the Plan. When some certificates were returned to the transfer agent as undeliverable, apparently because the mailing address for some creditors was incorrect, it became the creditors’ responsibility to come forward and claim their shares. When they failed to do so by June 3, 1985, such shares reverted to Toys “R” Us.
 

 Capital argues to us that after confirmation of the Plan, Toys “R” Us financial statements reported the extinguishment of all claims held by the General Creditors and reported the shares distributable to the General Creditors as issued and outstanding. However, this does not affect the application of the bar date. Nor does it create equity in favor of Capital. As Judge Cedarbaum concluded, Capital “offer[s] no legal authority for [an] estoppel argument, nor does [it] claim any detrimental reliance, an essential element of estoppel.”
 

 Capital’s claim that the General Creditors it represents are entitled to their shares because a similarly situated creditor received shares after the bar date is also without merit. That Toys “R” Us erroneously permitted one former creditor to claim its shares after the bar date is irrelevant to this case. Such a mistake does not affect the rights of other former creditors.
 

 Judgment affirmed.